[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 514 
 OPINION
{¶ 1} Plaintiff Laurel Valley Oil Company appeals a summary judgment of the Court of Common Pleas of Tuscarawas County, Ohio, entered in favor of defendants 76 Lubricants Company, Scott Babbitt, Performance Race Fuels Lubricants, and Richard Dunn on appellant's claim for tortious inference of business relations, violation of the Ohio Deceptive Trade Practices Act, and civil conspiracy. The trial court also granted summary judgment in favor of appellee Richard Dunn on appellant's claim for breach of fiduciary duty. Appellant assigns four errors to the trial court:
 {¶ 2} "THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF ALL DEFENDANTS/APPELLEES ON PLAINTIFF/APPELLANT LAUREL VALLEY OIL CO.'S CLAIM FOR TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS.
 {¶ 3} "THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF ALL DEFENDANTS/APPELLEES ON LAUREL VALLEY'S CLAIM FOR VIOLATION OF THE OHIO DECEPTIVE TRADE PRACTICES ACT.
 {¶ 4} "THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF APPELLEE RICHARD DUNN ON LAUREL VALLEY'S CLAIM FOR BREACH OF FIDUCIARY DUTY.
 {¶ 5} THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANTS/APPELLEES ON LAUREL VALLEY'S CLAIM FOR CIVIL CONSPIRACY." *Page 515 
 {¶ 6} Appellant's statement pursuant to Loc. App.R. 9 states summary judgment was inappropriate because genuine issues of material fact exist, and also, because the trial court erred in applying the law.
 {¶ 7} The record indicates appellant is a marketer and distributor of petroleum products doing business in Tuscarawas County and the surrounding area for nearly three-quarters of a century. Appellee 76 Lubricants Company is a division of Phillips Petroleum Company, manufacturing and marketing a full line of oils, lubricants, and greases for transportation and industrial applications. In the mid-1990's, appellant Laurel Valley signed on to become a branded distributor of 76 Lubricants products. Laurel Valley then had the right to buy products directly from appellee 76. Appellee 76 discourages its branded distributors from competing with other branded distributors, by asking them to service a specific geographic area or locale. For appellant Laurel Valley, its geographic area is Tuscarawas County and the immediately surrounding area.
 {¶ 8} Appellee Richard Dunn was employed by Laurel Valley for approximately five years. Appellee Dunn had previously become acquainted with appellee Scott Babbitt, who was the 76 Marketing Representative assigned to Laurel Valley. Laurel Valley alleged in preparation for stealing away its customers, Dunn began telling customers the company was failing financially and would go out of business, leaving them without a source for the oil and lubricant products they needed. Laurel Valley alleged Dunn "must have expressed" his unhappiness to Babbitt, and they allegedly joined forces in a scheme to setup a competing enterprise. Sometime prior to March 15, 1999, Babbitt introduced Dunn to Paul Brine, the President of Julian W. Perkins, Inc., a branded 76 distributor with offices in Elyria. Babbitt encouraged Brine to establish a distributorship to sell 76 products in the same geographic area as Laurel Valley. Brine hired Dunn to manage Performance Lubricants, the distributorship Perkins formed to compete with Laurel Valley. Dunn left his employment with Laurel Valley to manage Performance Lubricants.
 {¶ 9} Laurel Valley alleged Babbitt and Dunn knew their representations about appellant's shaky financial situation were untrue.
 {¶ 10} Originally Dunn was an employee of Performance Lubricants, Inc., and had no ownership interest in the company. However, at some later point, Dunn purchased Performance Lubricants from Perkins.
 {¶ 11} Appellant argued appellees' false and misleading statement about its financial problems caused it to suffer lost sales and profits, and damaged the value of its good will.
 {¶ 12} Civ.R. 56(C) states in pertinent part: *Page 516 
(C) Motion and proceedings
"The motion shall be served at least fourteen days before the time fixed for hearing. The adverse party, prior to the day of hearing, may serve and file opposing affidavits. Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages."
 {¶ 13} A trial court should not grant summary judgment if there is a genuine issue of any material fact, nor if, construing the evidence in favor of the non-moving party, reasonable minds could come to but one conclusion on the undisputed facts, Ormet Primary Aluminum Corporationv. Employers Insurance of Wassau, 88 Ohio St.3d 292, 2000-Ohio-330,725 N.E.2d 646. This court will review a summary judgment using the same standard as the trial court, Smiddy v. The Wedding Party, Inc. (1987),30 Ohio St.3d 35.
 I {¶ 14} In its first assignment of error, appellant Laurel Valley urges the trial court erred in granting summary judgment on its claim for tortious interference with business relations.
 {¶ 15} In Fred Siegel Company LPA v. Arter Hadden,85 Ohio St.3d 171, 1999-Ohio-260, 707 N.E.2d 853, the Ohio Supreme Court outlined the elements of tortious interference with contract. The elements are 1) the existence of contract, 2) the wrongdoer's knowledge of the contract, 3) the wrongdoer's intentional procurement of the breach, 4) lack of justification, 5) resulting damages, Siegel, paragraph one of the syllabus, citations deleted. The Supreme Court noted the establishment of the fourth element of the tort, namely lack of justification, requires proof the defendant's interference with another's contract was improper. Factors to be considered in determining whether someone has acted improperly are: the nature of the actor's conduct; the actor's motives; the interests of the others with which the conduct interferes; the interest sought to be advanced by the actor; the social interest in protecting the freedom of action of *Page 517 
the actor and the contractual interest of the others; the proximity or remoteness of the actor's conduct to the interference; and the relations between the parties. The establishment of the privilege of fair competition as set forth in Sections 7, 68 of the Restatement of the Law of Second of Torts will defeat a claim of tortious inference with contract where the contract is terminable at will.
 BUCKEYE MINING {¶ 16} In support of its claim against Scott Babbitt, appellant Laurel Valley argues Babbitt "lent his assent" to appellee Dunn's false statements about Laurel Valley's financial condition. Laurel Valley offers the deposition testimony of Jack M. Grinwis, Vice President of Buckeye Industrial Mining Company in charge of marketing. Grinwis testified ordinarily he did not have any input into the purchase of products, although occasionally, he would be involved. Grinwis testified Dunn told him 76 Lubricants had Laurel Valley on "credit hold", and Laurel Valley was having financial problems. On at least one occasion, Scott Babbitt was present, and nodded his head when Dunn made those statements. Grinwis testified he considered it totally inappropriate for Dunn to speak in this manner in front of Scott Babbitt, and Grinwis was uncomfortable with the situation. Grinwis testified he probably had a conversation with other persons at Buckeye Industrial Mining Company, but his company's buying practices with regard to Laurel Valley had not changed as a result of any of conversation he had with Richard Dunn.
 PERFORMANCE LUBRICANTS {¶ 17} Laurel Valley has argued Scott Babbitt urged Paul Brine of Performance Lubricants, Inc., to compete with Laurel Valley by telling Brine Laurel Valley was financially unstable. Laurel Valley argues this was in order to have Performance Lubricants, Inc. expand its business dealings into Tuscarawas County in competition with Laurel Valley.
 {¶ 18} In his deposition, Brine testified Babbitt introduced Richard Dunn with the intention of setting up a distribution outlet in the area of Tuscarawas County. Brine testified he was aware Laurel Valley was a distributor in the area at the time he was setting up Performance Lubricants, Inc., and expressed concern to Babbitt that Laurel Valley was in the same area as his proposed new outlet. In response, Babbitt allegedly told Brine Laurel Valley was financially unstable. At the time Babbitt and Dunn met with Brine, and Brine considered it "likely" Performance Lubricants would employ Richard Dunn in its new outlet.
 {¶ 19} Brine conceded he was always looking for business opportunities and the opportunity for his company to grow. He conceded he was well *Page 518 
aware if he expanded operations into Tuscarawas County, then he would be in competition with Laurel Valley. Brine denied he intended to "go after" Laurel Valley's customers specifically. Laurel Valley does not present evidence it actually lost business because of this.
 {¶ 20} With regards to Scott Babbitt, appellant argues he intentionally bolstered the credibility of Dunn with Valley Mining, and assisted Dunn in encouraging appellant's competitor.
 VALLEY MINING {¶ 21} Regarding Dunn, appellant refers us to the deposition of Richard Seibert. Seibert is a preventative maintenance supervisor for Valley Mining Company, Inc. In his position he is responsible for purchasing lubricants for Valley Mining. Seibert testified during the twelve years or so that he had been preventive maintenance supervisor, he had purchased from Campbell Oil, Holmes Oil, and Laurel Valley. Laurel Valley's representative was Richard Dunn in the spring of 1999. On one occasion, Seibert attempted to order bulk oil from Laurel Valley. Valley Mining would order twelve to thirteen loads of bulk oil per year, in 6500 to 7000 gallon increments. As part of their normal practice, Seibert called Richard Dunn and ordered the bulk oil. Seibert testified Dunn called him back and told him he would not be able to deliver it because 76 had a credit block on Laurel Valley's account. Seibert testified Dunn suggested Seibert go elsewhere for the oil.
 {¶ 22} Seibert testified he consulted with his CEO, and placed an order with a competing company. Seibert testified that it was his understanding that Laurel Valley would not be able to supply Valley Mining's needs because of its credit problems.
 {¶ 23} Seibert also testified after this incident, Richard Dunn called him on several occasions while Dunn was still working for Laurel Valley, in an attempt to get Valley Mining's business back for Laurel Valley. Dunn also contacted Seibert after he left Laurel Valley, in order to get his business for Dunn's new concern.
 {¶ 24} Seibert also testified his company stayed with its new supplier, Campbell Oil, because it had a better price.
 THE CREDIT HOLD {¶ 25} The parties dispute the significance of the credit hold 76 Lubricants had placed on Laurel Valley's account. Laurel Valley argues it did not default on any payments for the product it sold, and the credit hold was intended to monitor the account because 76 Lubricants had various billing problems. Laurel Valley asserts there is no evidence in the record to demonstrate Laurel *Page 519 
Valley ever defaulted on an obligation to pay, nor was there any occasion when 76 refused to sell products to Laurel Valley.
 {¶ 26} 76 responds that if any sale between Valley Mining and Laurel Valley was lost as a result of Dunn's representations about the credit hold, 76 and Scott Babbitt did not participate in the transaction, and in fact, Campbell was not a 76 distributor, so 76 also lost sales as a result.
 {¶ 27} Laurel Valley argues the outstanding amount on the credit line with Laurel Valley reached over $300,000 at its high point, and 76 required the Laurel Valley account be placed on hold until the credit liability was reduced to $100,000, including any outstanding orders. Appellees argue if Dunn told the customer the product could not be shipped because of the credit hold, it was a factual statement and not actionable.
 {¶ 28} Reviewing the above de novo, in accord with the summary judgment, it is apparent the parties dispute whether the above scenario actually took place, and if so, the significance of those actions. We find reasonable minds could differ regarding the significance of the credit hold, and its impact on Laurel Valley Oil Company's ability to fill orders from its customers. Reasonable minds could differ regarding whether Dunn attempted to interfere with Laurel Valley Oil Company's relationship with its customers, by improperly refusing the Valley Mining order, or whether he acted properly.
 {¶ 29} We find appellant raises no actions or circumstances involving 76 that contributed to the tortuous interference with the contract. Appellant does not present evidence it lost income because of any of the actions ascribed to Babbitt.
 {¶ 30} The assignment of error is sustained as to Dunn, and overruled as to 76 and Babbitt.
 II {¶ 31} In its second assignment of error, appellant argues the trial court should not have granted summary judgment in favor of all appellees on its claim for violation of the Ohio Deceptive Trade Practices Act.
 {¶ 32} R.C. 4165.02(A) provides a party commits a deceptive trade practice when in the course of its business it disparages the goods, services, or business of another by a false representation of fact.
 {¶ 33} Because we find reasonable minds could differ regarding the actions and implications of Dunn, we find summary judgment was inappropriate on Laurel Valley's claim for violation of the Ohio Deceptive Trade Practices Act.
 {¶ 34} The second assignment of error is sustained. *Page 520 
 IV {¶ 35} In its fourth assignment of error, appellant argues the trial court should not have granted summary judgment on its claim for civil conspiracy. Appellant correctly defines civil conspiracy as a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages, Kenty v. Transam Premium Insurance Company (1995),72 Ohio St.3d 415, 650 N.E.2d 863.
 {¶ 36} Appellant argues Babbitt nodded his head and bolstered Dunn's credibility with Grinwis. However, Grinwis testified his company did not stop dealing with Laurel Valley.
 {¶ 37} Appellant argues Babbitt introduced Dunn to Brine, a competitor of Laurel Valley, in an effort to undermine appellant's client base. However, there is no evidence Laurel Valley lost any sales as a result.
 {¶ 38} We find reasonable minds could not differ regarding Laurel Valley's claim for civil conspiracy. Accordingly, we find the trial court correctly entered summary judgment on this claim.
 {¶ 39} The fourth assignment of error is overruled.
 III {¶ 40} In its third assignment of error, appellant argues the trial court should not have granted summary judgment in favor of appellee Richard Dunn on its claim for breach of fiduciary duty. In Stone v.Davis (1981), 66 Ohio St.2d 74, 419 N.E.2d 1094, the Supreme Court defined a fiduciary relationship as one in which special confidence and trust is reposed in the integrity and fidelity of another, resulting in a position of superiority or influence acquired by virtue of the special trust, Stone at 78, citations deleted. Not all employees are fiduciaries.
 {¶ 41} Appellant cites no facts in support of its allegation the relationship between Dunn and appellant was a fiduciary relationship, characterized by some special competence and trust which Dunn betrayed.
 {¶ 42} We find the trial court did not err in granting summary judgment in favor of appellee Richard Dunn on Laurel Valley's claim for breach of fiduciary duty.
 {¶ 43} The third assignment of error is overruled.
 {¶ 44} For the foregoing reasons, the judgment of the Court of Common Pleas of Tuscarawas County, Ohio, is affirmed in part and reversed in part, and the *Page 521 
cause is remanded to that court for further proceedings in accord with law and consistent with this opinion.
By Gwin, P.J., Hoffman, J., and Edwards, J., concur.
 JUDGMENT ENTRY {¶ 1} This cause comes before us upon Appellant's Motion for Clarification and Reconsideration or in the Alternative Certification of Conflict.
 {¶ 2} Our opinion states that only Appellant's action against Richard Dunn is viable. We clarify our opinion, therefore, that we have sustained the second assignment of error only as to Richard Dunn.
 {¶ 3} Appellant's Motion for Reconsideration is overruled.
 {¶ 4} We further find our opinion is not in conflict with that of the Ninth District in Gosden v. Louis (1996)1116 Ohio App.3d 195. Gosden is factually distinguishable.
 {¶ 5} The motion to certify conflict is overruled.
 {¶ 6} IT IS SO ORDERED.