## WAUSEON PLAZA LIMITED PARTNERSHIP
### et al., Appellants and Cross–Appellees,

v.

## WAUSEON HARDWARE COMPANY, Appellee and Cross–Appellant, et al.

[Cite as *Wauseon Plaza L.P. v. Wauseon Hardware Co.*, 156 Ohio App.3d 575, 2004-Ohio-1661.]

Court of Appeals of Ohio,
Sixth District, Fulton County.

No. F–02–029.

Decided March 31, 2004.

576

Theodore M. Rowen, Teresa L. Grigsby and Douglas Wilkins, for appellants and cross-appellees.

Jan Stamm, Mark Hagans and Robert Bohmer, for appellees and cross-appellants.

LANZINGER, Judge.

{¶ 1} Appellants and cross-appellees, Wauseon Plaza Limited Partnership, C.O. Management Services Company, and Charles O. Howey, trustee of the Charles O. Howey Trust (collectively "Plaza Limited"), appeal from the judgment of the Fulton County Court of Common Pleas granting judgment in the amount of $681,570.71 to appellee and cross-appellant Wauseon Hardware Company ("Wauseon Hardware"). Because we conclude that the trial court erred in imposing an obligation on Plaza Limited to maintain anchor stores but did not err in applying the percentage-rent provision applicable, we reverse in part and affirm in part.

## I. Background

{¶ 2} This case arises from a lease agreement at a shopping center located in Wauseon, Ohio, on Shoop Avenue. The center is owned by Charles O. Howey, trustee of the Charles O. Howey Trust, and Wauseon Hardware is one of its tenants. The original operation of the shopping center on behalf of Charles O. Howey, trustee of the Charles O. Howey Trust, was handled by Wauseon Plaza Limited Partnership, but management responsibilities were turned over to C.O. Management Services Company.

{¶ 3} When Wauseon Hardware became a tenant in the early 1970s as a Coast-to-Coast Stores, Inc. ("Coast-to-Coast") franchise, the shopping center was

owned by Wauseon Plaza Company. Wauseon Plaza Company and Coast-to-Coast entered into a lease agreement on October 17, 1989, for a lease term of May 1, 1990, to April 30, 2000, with two five-year renewal options (the "lease"). This is the lease that is now the subject of this appeal. Coast-to-Coast had assigned the lease to Wauseon Hardware on November 20, 1989, and Plaza Limited had assumed the lease from Wauseon Plaza Company upon the purchase of the property in 1992. In 1999, Wauseon Hardware changed its affiliation from Coast-to-Coast to Ace Hardware when Coast-to-Coast ceased operations.

## A. The Lease

{¶ 4} Starting in 1995, several businesses began to leave the shopping center. Up until that time, the shopping center had been almost fully occupied. Two of the three anchor stores,[1] Dollar General and Sun Plaza Discount Drug, a.k.a. Allan Pharmacy, moved out of the shopping center. Other businesses that left included Buckeye Communications, a laundromat, and a florist. Over this period, Wauseon Hardware noticed a decline in its gross sales and its customer counts. In June 2000, Wauseon Hardware notified Plaza Limited that it intended to invoke the provision of paragraph 22 of the lease to pay rent in the amount of three percent of its gross sales if the two anchor stores were not filled by July 31, 2000. The next month, Wauseon Hardware did just that, and Plaza Limited deposited the reduced rent checks, sending delinquency notices to Wauseon Hardware.

## B. The Complaint and Judgment

{¶ 5} On January 22, 2001, Plaza Limited served a three-day eviction notice on Wauseon Hardware, and followed that up with a forcible entry and detainer action in the Fulton County Court, Western Division, filed by Wauseon Plaza Limited Partnership, seeking restitution of the premises. Wauseon Hardware filed an answer, counterclaim, and third-party complaint against C.O. Management Services Company and Charles O. Howey, trustee of the Charles O. Howey Trust. After the action was removed to the Fulton County Court of Common Pleas, the parties amended their pleadings. In its second amended complaint, Plaza Limited dropped the forcible entry and detainer cause of action, sought unpaid rent and common area maintenance ("CAM") charges as well as future rent and CAM charges accruing prior to judgment, and asked for a declaratory judgment defining the amount of rent and CAM charges owed by Wauseon

---

1. Throughout its judgment entry, the trial court refers to the "four anchor tenants." A review of the lease shows that there are only three. The lease agreement between the parties identifies three types of stores, a grocery store, variety store, and a drug store (the "anchor tenants").

Hardware under the lease. Wauseon Hardware's claims against Plaza Limited included breach of lease, bad faith, tortious interference with business relations, and disgorgement of rents.

{¶ 6} A bench trial was held March 27–28, 2002. In its judgment entry filed October 4, 2002, the trial court found in favor of Wauseon Hardware on Plaza Limited's claim for unpaid rent and CAM charges and denied Plaza Limited's request for a judicial declaration that Wauseon Hardware did not have the right to pay reduced rent. The trial court then awarded Wauseon Hardware damages on its counterclaim in the amounts of $51,582.01 for breach of lease, $10,000 for bad faith, $470,069.60 for tortious interference with business relations, and $149,919.10 for disgorgement of overcharged rent. The trial court, however, declined to award Wauseon Hardware punitive damages or attorney fees. A nunc pro tunc entry was filed on October 10, 2002, to clarify that the award against "Plaintiff" included Wauseon Plaza Limited Partnership, Charles O. Howey, as trustee of the Charles O. Howey Trust, and C.O. Management Services Company, based on the third-party complaint and the stipulation that the parties had entered into on the day of trial.

## II. Assignments of Error

{¶ 7} Appellant and cross-appellee Plaza Limited appeals from the decisions of the trial court and sets forth the following eight assignments of error:

{¶ 8} "I. The trial court erred in finding Plaza Ltd. breached the lease agreement by failing to maintain four 'anchor stores' as the lease imposes no such obligation.

{¶ 9} "II. The trial court erred in applying tort theories of recovery to resolve the Hardware's counterclaim as such theories are inapplicable as a matter of law in the presence of a contract governing the parties' business relationship.

{¶ 10} "III. The trial court erred in finding Plaza Ltd. liable for, and awarding damages allegedly stemming from, 'bad faith' as no such legal claim exists in the context of this case, and because Plaza Ltd.'s actions do not amount to 'bad faith' or malicious conduct as a matter of law.

{¶ 11} "IV. The trial court erred in finding Plaza Ltd. liable for tortious interference with business relationships, as that claim does not apply as a matter of law under circumstances of this case, and because Plaza Ltd.'s actions did not constitute 'wrongful interference.'

{¶ 12} "V. The trial court erred in awarding damages for lost profits as there was no non-speculative, certain evidence that any wrongful conduct of Plaza Ltd. was causally connected to the Hardware's alleged lost profits.

{¶ 13} "VI. The trial court erred in holding Plaza Ltd. liable for 'disgorgement of rent' as no such theory of recovery exists as a matter of law, and because the evidence shows there was no unjust enrichment.

{¶ 14} "VII. The trial court erred in extending the judgment against Plaza Ltd. via its Nunc Pro Tunc Entry to Charles O. Howey, Trustee, and C.O. Management Services, as neither is a party to the lease agreement.

{¶ 15} "VIII. The trial court erred in finding that the Hardware was not in breach of contract, as the evidence showed the Hardware to be in arrears of the payment of the proper amount of rent due to Plaza Ltd."

{¶ 16} Appellee and cross-appellant Wauseon Hardware presents the following assignment of error in event of reversal:

{¶ 17} "The trial court erred in excluding the deposition of Paul Howey."

{¶ 18} For its cross-appeal, Wauseon Hardware asserts the following two assignments of error:

{¶ 19} "I. The trial court erred in applying a 35% reduction factor to the damages granted in favor of Wauseon Hardware.

{¶ 20} "II. The trial court erred in finding that appellants' actions were 'wanton and willful' but declining to award Wauseon Hardware punitive damages."

{¶ 21} We will reorder the assignments of error for easier discussion.

### III. Contract Claims

{¶ 22} Each party has claimed that the other breached the lease. The trial court found that Wauseon Hardware did not breach the lease when it reduced its monthly rent payments and exercised the option in paragraph 22. It further found that Plaza Limited breached the lease when it failed to maintain anchor stores and that its actions amount to bad faith.

{¶ 23} In this section relating to contract claims, we will first address the eighth assignment of error because it directly addresses the rights of the parties under the lease. Then we will consider the first assignment of error on whether Plaza Limited breached the lease. The second assignment of error will be discussed as section VII.A. in "Remaining Assignments of Error and Cross Assignments of Error."

### A. Breach of Lease by Wauseon Hardware—Eighth Assignment of Error

{¶ 24} Plaza Limited contends that the trial court erred by finding in favor of Wauseon Hardware on its breach of contract complaint. The parties dispute

what obligations Plaza Limited had under the agreement and what rights Wauseon Hardware had to exercise contract options.

{¶ 25} "Generally, a breach of contract occurs when a party demonstrates the existence of a binding contract or agreement; the nonbreaching party performed its contractual obligations; the other party failed to fulfill its contractual obligations without legal excuse; and the nonbreaching party suffered damages as a result of the breach." (Citations omitted.) *Garofalo v. Chicago Title Ins. Co.* (1995), 104 Ohio App.3d 95, 108, 661 N.E.2d 218.

{¶ 26} A court must interpret a contract so as to carry out the intent of the parties. *Foster Wheeler Enviresponse, Inc. v. Franklin Cty. Convention Facilities Auth.* (1997), 78 Ohio St.3d 353, 361, 678 N.E.2d 519. The intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement. *Shifrin v. Forest City Ent., Inc.* (1992), 64 Ohio St.3d 635, 638, 597 N.E.2d 499.

{¶ 27} Courts have an obligation to give plain language its ordinary meaning and to refrain from revising the parties' contract. *Alexander v. Buckeye Pipe Line Co.* (1978), 53 Ohio St.2d 241, 246, 7 O.O.3d 403, 374 N.E.2d 146, and paragraph two of the syllabus. Accordingly, interpretation of clear and unambiguous contract terms is a matter of law, and our standard of review is de novo. *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm* (1995), 73 Ohio St.3d 107, 108, 652 N.E.2d 684.

{¶ 28} Plaza Limited argues that Wauseon Hardware breached the lease by failing to pay monthly rent of $4,465 and CAM charges. Starting in August 2000, Wauseon Hardware invoked the option in paragraph 22 of the lease by paying three percent of its monthly gross sales as rent, a substantial reduction in the monthly amount. Wauseon Hardware also capped its payment of yearly common area maintenance charges to $1,800 as provided in paragraph 21 of the lease. Plaza Limited argues that Wauseon Hardware did not have the right to exercise the paragraph 22 option to pay percentage rent because the original tenant under the lease, Coast–to–Coast, had reserved to itself the right to exercise any option when it assigned the lease to Wauseon Hardware on November 20, 1989. That transfer and assignment provided:

{¶ 29} "In consideration of Ten Dollars ($10.00) and other valuable consideration, I/We hereby sell, transfer and assign unto Wauseon Hardware Company, subject to the rights, if any, of prior lien holder, effective May 1, 1990, all rights, title, and interest, except to COAST TO COAST STORES (CENTRAL ORGANIZATION) Incorporated options, if any, in that certain Lease dated October 17, 1989 * * *."

{¶ 30} This assignment comported with paragraph 18 of the lease now at issue, which states:

{¶ 31} "Landlord hereby agrees to any transfer(s) and assignment(s) of this Lease by Tenant, without notice, to a person, corporation, or other entity which is granted a Franchise to operate a COAST TO COAST STORES store on the premises, or to COAST TO COAST STORES ~~(CENTRAL ORGANIZATION)~~ INCORPORATED (hereinafter called 'assignee'). Upon such transfer(s) and assignment(s), the former Tenant shall be released and discharged from any further liability under this Lease. Thereafter, the term 'Tenant' shall apply to and mean only such assignee.

{¶ 32} "If Landlord gives notice of any default hereunder, and Tenant fails to cure such default within the thirty (30) day period specified in Paragraph 20 below, or if Tenant ceases to operate a COAST TO COAST STORES store on the premises, or if Tenant fails to exercise any option or election in this Lease, then COAST TO COAST STORES ~~(CENTRAL ORGANIZATION)~~ INCORPORATED shall have the option, by written notice to Landlord, within thirty (30) days after the time has lapsed to cure such default or after Tenant has failed to exercise any option or election in this Lease, or within sixty (60) days after Tenant has ceased to operate a COAST TO COAST STORES store, to assume this Lease and in such event shall have the right simultaneously to exercise any or all such options and elections, and the right to transfer(s) and assignment(s) provided in this paragraph.

{¶ 33} "No assignee of this Lease shall be permitted to make any change, modification, or alteration of the terms of this Lease without the prior written consent of COAST TO COAST STORES ~~(CENTRAL ORGANIZATION)~~ INCORPORATED."

{¶ 34} In other words, Wauseon Hardware, a Coast–to–Coast franchisee, became the "tenant" under the lease. Coast–to–Coast reserved in the assignment any Coast–to–Coast option in the lease. The lease, however, contains several options, not all of which may be characterized as Coast–to–Coast options. The tenant has the option to extend the lease term for two, successive five-year periods (paragraph 4). The tenant has the option to pay percentage rent if an anchor store is closed for six months and also has the option to terminate the lease if an anchor store is closed for a year (paragraph 22). As paragraph 18 quoted above shows, the only Coast–to–Coast option in the lease is the right to assume the lease under certain conditions. Wauseon Hardware, therefore, has all the rights, obligations and options granted to the tenant, including the right to pay percentage rent and to extend the lease.

{¶ 35} Plaza Limited also argues that Wauseon Hardware waived the right to exercise the option to pay a percentage rent because it continued to remit monthly rent of $4,465 until August 2000, even though it could have invoked the percentage rent after Dollar General left the shopping center in 1995 and again when Allan Pharmacy left in 1997. Wauseon Hardware, however, did provide notices to Plaza Limited in 1996 and 1998 that although it had the right to pay percentage rent, it preferred that Plaza Limited find new tenants. The June 2000 notice, however, stated that Wauseon Hardware intended to invoke the percentage rent provision starting in August if the anchor stores remained unoccupied. It finally did so. This continued objection to the situation of tenants leaving does not indicate waiver. See *Violante v. Quadland Corp.* (Aug. 29, 1997), 11th Dist. No. 96–T–5473, 1997 WL 531241.

{¶ 36} With regard to the CAM charges, there are two lease provisions that set forth Wauseon Hardware's responsibility to pay common area expenses. Paragraph 10 provides that the tenant is responsible for up to $300 of the maintenance, repair, and replacement of certain structural equipment such as plumbing, electrical, and heating. Paragraph 21 provides that the tenant shall share no more than $1,800 of the cost of maintaining the parking area. There is some competent, credible evidence to support the trial court's finding that Wauseon Hardware did not breach the lease in failing to pay the total amount Plaza Limited sought as CAM charges because either they were not expenses included within paragraph 10 or 21 or the cap on these charges had been met. We, therefore, affirm the trial court and find Plaza Limited's eighth assignment of error not well-taken.

### B. Breach of Lease by Plaza Limited—First Assignment of Error

{¶ 37} In the first assignment of error, Plaza Limited contends that the trial court erred in finding that it had breached the lease, as paragraph 22 does not impose an obligation on the landlord to maintain the anchor stores as tenants.

{¶ 38} Wauseon Hardware argues that a fair and reasoned review of the lease demonstrates that there was a duty incumbent on Plaza Limited as the landlord to install and retain the anchor tenants. Conceding that the word "maintain" is not in paragraph 22, Wauseon Hardware nonetheless argues that if such a duty is not implied, then Plaza Limited's right to install substitute tenants would be meaningless. Furthermore, if the anchor stores were not so important, Wauseon Hardware would not have agreed to exempt them from its protection clause. The trial court agreed with the tenant, Wauseon Hardware, determining that there was "an injunctive imperative" upon Plaza Limited to maintain different types of anchor stores.

{¶ 39} The major dispute focuses upon paragraph 22 of the lease, which begins:

{¶ 40} "22. OTHER BUSINESS REQUIRED IN CENTER

{¶ 41} "Landlord will enter into leases not shorter than the term of this Lease, and with rental payments commencing not later than __N/A,__ with the following named tenants which will operate a grocery store, a variety store, and a drug store, as indicated in the areas shown for each in said Exhibit A hereof:

| "[Type of Store] | | Ground Floor Space (sq.ft.) |
|---|---|---|
| "Grocery | Miller Super Mkt | 18,000 |
| "Variety | Variety Store | 8,000 |
| "Drug | Sun Drug | 3,000 " |

{¶ 42} Thus, the first part of paragraph 22 requires the landlord (which in 1989 was Wauseon Plaza Company, Plaza Limited's assignor) to enter into leases with three types of tenants: a grocery store, a variety store, and a drug store, the anchor tenants. When the 1989 lease was executed, all of the anchor tenants were resident, so it was unnecessary for a commencement date to be set for this provision.

{¶ 43} Paragraph 22 continues:

{¶ 44} "If any one of the tenants listed above does not commence rental payments under its lease by the date specified above, Landlord may substitute another tenant in the same business and of comparable financial responsibility, to occupy the same premises, (hereinafter called 'substituted tenant,') under a lease of the same duration with occupancy commencing on or before __N/A__."

{¶ 45} Both when the lease was executed and in 1992 when Plaza Limited assumed the lease as landlord, the anchor tenants were there and already paying rent. This provision allowing the landlord to obtain substitute tenants before a specified date is inapplicable and not at issue.

{¶ 46} Paragraph 22 concludes by providing:

{¶ 47} "If, during the term of this Lease, any one of the stores described above or a substituted tenant shall fail to open for business with the public, or, after opening, cease to remain open for business to the public for any reason or cause for a period of at least one hundred eighty (180) days, then, commencing with the first day of the calendar month next following and continuing until all of the foregoing stores shall reopen for business with the public, or until a substituted tenant shall open for business with the public, instead of the rental payments provided hereunder, Tenant shall, at its option, pay a monthly Percentage Rent in an amount equal to three percent (3%) of Gross Sales. Further, if any one of the foregoing stores, or a substituted tenant shall not open or after opening, shall cease to remain open for business with the public for a period of three hundred

sixty-five (365) days, Tenant shall have the right, at its option, to terminate this Lease by written notice to Landlord, such termination to be effective on the date specified in the notice."

{¶ 48} As we have seen, this last provision of paragraph 22 provides Wauseon Hardware with relief if business should suffer as the result of an anchor store's closing. The paragraph does not, however, guarantee Wauseon Hardware or any tenant that anchor stores would always remain and does not guarantee a certain level of "retail foot traffic." While we agree with the trial court that the parties were apparently aware of the significance of maintaining a high level of "retail foot traffic" by providing for relief (i.e., rent adjustment) if one of the anchor stores did not remain open for business, we find that paragraph 22 does not create an affirmative duty on the landlord to retain or replace anchor tenants. If the parties had intended to obligate the landlord to maintain anchor stores, then such a provision could have been added to paragraph 22. It is not the responsibility or function of this court to rewrite the parties' contract in order to provide for a more equitable result. *Aultman Hosp. Assn. v. Community Mut. Ins. Co.* (1989), 46 Ohio St.3d 51, 54–55, 544 N.E.2d 920. In the absence of fraud or bad faith, this court will not save one party from an improvident contract when both parties had equal bargaining power. *Ullmann v. May* (1947), 147 Ohio St. 468, 34 O.O. 384, 72 N.E.2d 63, paragraph two of the syllabus.

{¶ 49} Plaza Limited certainly has an incentive to find new anchor tenants, for it loses rent both from empty anchor stores and from tenants such as Wauseon Hardware who have the option of paying percentage rent. The contract, however, does not require Plaza Limited to maintain or replace anchor tenants; therefore, Plaza Limited did not breach paragraph 22 of the lease.

{¶ 50} Wauseon Hardware finally argues that there were other breaches of the lease, even if Plaza Limited were not required to maintain anchor stores. It contends that there was evidence that Plaza Limited breached the lease with regard to signage and in failing to properly maintain the store entrances. Plaza Limited responds that the trial court did not find any breach of the lease for these reasons. We agree with the landlord on this issue. While neither party could identify with any certainty how the award of $51,582.01 was arrived at, this amount matches Plaza Limited's claim for unpaid rent and CAM charges. In other words, the trial court turned the landlord's claim against it after finding that it had breached the "obligation" to guarantee anchor tenants. Because we find that the contract imposes no such obligation, we find the first assignment of error well taken.

## IV. Bad Faith—Third Assignment of Error

{¶ 51} Plaza Limited assigns error on the trial court's finding for Wauseon Hardware on the "bad faith" claim. Plaza Limited argues that it had no duty to

act in "good faith," that there was no implied contract term to act in "good faith," and that its actions do not amount to "bad faith." Wauseon Hardware responds that the trial court properly awarded a measure of damages on the bad-faith claim arising from Plaza Limited's breach of contract. It maintains that Ohio law does impose a duty of good faith and fair dealing upon the parties in the performance and enforcement of a contract.

{¶ 52} Initially, we note that Plaza Limited characterizes Wauseon Hardware's claim for bad faith as a tort claim. A careful review of the third-party complaint/counterclaim shows, however, that the claim is actually rooted in contract, not tort. In *Bolling v. Clevepak Corp.* (1984), 20 Ohio App.3d 113, 20 OBR 146, 484 N.E.2d 1367, this court stated that parties to a contract are "bound toward one another by standards of good faith and fair-dealing." In *Lakota Local School Dist. Bd. of Edn. v. Brickner* (1996), 108 Ohio App.3d 637, 646, 671 N.E.2d 578, we clarified *Bolling* and noted that *Bolling* does not stand for the proposition that breach of good faith exists as a separate claim. "Instead, [*Bolling* recognizes] the fact that good faith is part of a contract claim and does not stand alone." Id.

{¶ 53} The trial court, in finding bad faith, relied upon evidence it characterized as showing that Plaza Limited failed to negotiate new leases with the new retail business, failed to fairly negotiate new leases with existing tenants such as the florist and the laundromat, attempted to drive out existing tenants such as Allan Pharmacy and Bernicke's through litigation, and filed and prosecuted sham proceedings against Wauseon Hardware. These numerous acts "demonstrated a pattern and practice of efforts targeted to drive out viable commercial tenants with long-standing businesses in the Plaza," the trial court said.

{¶ 54} Nevertheless, the trial court's decision on this point is premised on its fundamental interpretation that Plaza Limited had a duty to maintain the anchor stores and a certain level of "foot traffic." As noted, the lease, however, imposes no such obligation. Plaza Limited simply cannot be liable for failing to perform in good faith and fair dealing an obligation that was not imposed upon it by the lease. We find the third assignment of error well taken.

## V. Tortious Interference with Business Relations— Fourth Assignment of Error

{¶ 55} In the fourth assignment of error, Plaza Limited contends that the trial court erred in finding it liable for tortious interference with business relationships, as this claim is conclusively foreclosed by the existence of an alternate breach-of-contract claim. In *Digital & Analog Design Corp. v. N. Supply Co.* (1989), 44 Ohio St.3d 36, 540 N.E.2d 1358, the Ohio Supreme Court stated, "It is well established that though a breach of a duty under a contract or lease

necessarily interferes with the injured party's business relations with third parties, the injured party is limited to an action for breach of contract and may not recover in tort for business interference. An exception exists, and a tort action may lie, only where the breaching party indicates, by his breach, a motive to interfere with the adverse party's business relations rather than an interference with business resulting as a mere consequence of such breach." (Citations omitted.) Id., 44 Ohio St.3d at 46–47, 540 N.E.2d 1358.

{¶ 56} In this case, we have concluded that Plaza Limited was not contractually obligated to maintain either anchor tenants or "foot traffic." Such a conclusion does not, however, automatically preclude liability in tort for interfering with Wauseon Hardware's business.

{¶ 57} The torts of interference with business relationships and contract rights generally occur when a person, without a privilege to do so, induces or otherwise purposely causes a third person not to enter into, or continue a business relation with, another or not to perform a contract with another. *A & B–Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council* (1995), 73 Ohio St.3d 1, 14, 651 N.E.2d 1283. The elements of tortious interference with a business relationship are (1) a business relationship; (2) the tortfeasor's knowledge thereof; (3) an intentional interference causing a breach or termination of the relationship; and (4) damages resulting therefrom. *Diamond Wine & Spirits, Inc. v. Dayton Heidelberg Distrib. Co., Inc.*, 148 Ohio App.3d 596, 774 N.E.2d 775, 2002-Ohio-3932, at ¶ 23. Tortious interference with business relationships includes intentional interference with prospective contractual relations not yet reduced to a contract. Id. The interference, however, must be intentional, because Ohio law does not recognize negligent interference with a business relationship. Id.

{¶ 58} Plaza Limited initially argues that its conduct with regard to the other tenants was privileged. Wauseon Hardware responds that this issue is being raised for the first time on appeal. In the written closing argument and reply filed with the trial court, Plaza Limited argued that there was nothing illegal or improper about its actions or conduct. Case law on tortious interference with business relations uses the terms "improper" and "without privilege" interchangeably. See, e.g., *Becker Equip., Inc. v. Flynn*, 12th Dist. No. CA2002–12–313, 2004-Ohio-1190, 2004 WL 486219; *Laurel Valley Oil Co. v. 76 Lubricants Co.*, 154 Ohio App.3d 512, 2003-Ohio-5163, 797 N.E.2d 1033. Because Plaza Limited has sufficiently alleged that it had a privilege, we will address this argument.

{¶ 59} Wauseon Hardware contends that Plaza Limited's actions were not privileged because (1) it tried to evict Allan Pharmacy, a commercially viable

tenant, after it missed and promptly cured one rental payment; (2) it failed to honor Anything Grows' notice of renewal and then charged excessive rent; (3) it failed to negotiate a new lease with the laundromat; (4) it caused Dollar General to leave due to its mismanagement of the shopping center; and (5) it advertised the space occupied by Bernicke's as available when it was not.

{¶ 60} The trial court faulted Plaza Limited's stated intent not to renew any of the inherited leases so that it could replace those leases with its own triple-net leases, which would pass certain expenses and taxes through to the tenants. The goal was to have uniform shopping-center leases. The trial court determined that Plaza Limited, without privilege to do so, engaged in a pattern and practice of driving tenants out of the shopping center, interfering with existing tenants, and failing to negotiate in good faith to install viable commercial tenants. The trial court found that, as a result of these actions, the landlord induced patrons and potential patrons from frequenting the shopping center and purchasing merchandise from Wauseon Hardware, which amounted to tortious interference of the hardware's business relations with shopping-center customers and potential customers.

{¶ 61} With respect to Plaza Limited's claims of privilege:

{¶ 62} "In determining whether an actor's conduct in intentionally interfering with a contract or a prospective contractual relation of another is improper or not, consideration is given to the following factors:

{¶ 63} "(a) the nature of the actor's conduct,

{¶ 64} "(b) the actor's motive,

{¶ 65} "(c) the interests of the other with which the actor's conduct interferes,

{¶ 66} "(d) the interests sought to be advanced by the actor,

{¶ 67} "(e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other,

{¶ 68} "(f) the proximity or remoteness of the actor's conduct to the interference and

{¶ 69} "(g) the relations between the parties." *Walter v. Murphy* (1988), 61 Ohio App.3d 553, 555, 573 N.E.2d 678, citing 4 Restatement of the Law 2d, Torts (1979) 26–27, Section 767; See, also, *Juhasz v. Quik Shops, Inc.* (1977), 55 Ohio App.2d 51, 57, 9 O.O.3d 216, 379 N.E.2d 235.

{¶ 70} Wauseon Hardware essentially asserts that Plaza Limited was obligated to enter into and to maintain leases with retail businesses so that foot traffic would be created that would result in potential customers and sales. The problem with this claim is that Wauseon Hardware was required to establish

Plaza Limited's obligation to enter into such leases. The hardware store also needed to show that Plaza Limited intended to interfere with the hardware's customers when the landlord engaged in certain conduct towards the other tenants of the shopping center.

{¶ 71} A review of the record shows that Plaza Limited did not act in any manner that it was not entitled to. As a matter of law, the failure or refusal to transfer property rights to another does not constitute interference with a prospective contractual relationship. *Willow Park Convalescent Home, Inc. v. Crestmont Cleveland Partnership,* 8th Dist. Nos. 81147 and 81259, 2003-Ohio-172, 2003 WL 132291. Plaza Limited was not under any contractual or legal requirement to negotiate a new lease with the laundry. While Wauseon Hardware and the trial court opined that Plaza Limited sought excess rent in its dealings with the laundry and the florist, we recognize that a corporation has the right and privilege to pursue economic opportunities to their maximum benefit. *Busch v. Premier Integrated Med. Assocs., Ltd.,* 2d Dist. No. 19364, 2003-Ohio-4709, 2003 WL 22060392. The evidence does not show any wrongful act on the part of Plaza Limited.

{¶ 72} The evidence does show other forces at work. Dollar General left because of its concern about the continued viability of the shopping center. Allan Pharmacy did not cure the admitted default of its lease until after it received a three-day notice. After Allan Pharmacy tendered rent payment, Plaza Limited did not pursue eviction proceedings.

{¶ 73} The evidence shows that Anything Grows and Plaza Limited disputed whether the florist timely renewed its lease. The dispute was ultimately resolved, and Anything Grows paid back rent and vacated its store in the shopping center. While the tenants may not have liked Plaza Limited's management of the shopping center and its insistence upon new, uniform leases when the old leases expired, this disfavored management does not amount to an improper, wrongful act.

{¶ 74} Wauseon Hardware's tortuous-interference claim also requires a showing that it was Plaza Limited's intent to drive away customers. It is not enough that there may have been intent to drive away certain tenants, for Wauseon Hardware's claim is not based on any business relationship with the other tenants but on the business relationship with its own potential customers. The element of causation in a tortuous-interference-with-a-business-relationship case may, of course, be established by circumstantial evidence. *Hoover v. Curtis* (June 15, 2001), 2d Dist. No. 18580, 2001 WL 669369. Nonetheless, there is a lack of any evidence showing that it was Plaza Limited's intent to drive Wauseon Hardware's customers away. While several witnesses testified that Paul Howey

made a statement regarding getting rid of riff-raff tenants, this does not establish that Plaza Limited intended to drive away Wauseon Hardware's customers.

{¶ 75} Based on the above, we find Plaza Limited's fourth assignment of error well taken.

{¶ 76} The fifth assignment of error will be addressed as section VII.B. in "Remaining Assignments and Cross Assignments of Error."

## VI.   Disgorgement of Rent—Sixth Assignment of Error

{¶ 77} In the sixth assignment of error, Plaza Limited contends that the trial court erred in holding it liable for "disgorgement of rent."   In its judgment entry, the trial court found that starting in September 1, 1995, six months after the departure of Dollar General, Wauseon Hardware was entitled to pay three percent of its gross sales as rent.   As a result, Wauseon Hardware was awarded $149,919.10 for rent overpaid from September 1, 1995, until March 2002.

{¶ 78} Plaza Limited challenges this award, arguing that there is no cause of action for disgorgement of rents.   Unless and until Wauseon Hardware exercised the percentage-rent option in paragraph 22, the landlord should expect monthly rent of $4,465.   Wauseon Hardware, on the other hand, contends that it retained the contract right to recover for breach of contract the overpaid rent in accordance with the anti-waiver provision as set forth in paragraph 27.   This paragraph provides as follows:

{¶ 79} "It is expressly covenanted and agreed that no breach of this Lease shall be deemed to have been waived, except as provided in Paragraph 20 above, nor shall either party be guilty of laches, because of any failure of either party to take action pertaining to such breach.   The parties hereto shall have, for the term of this Lease, the full remedies and rights granted under the laws of the state where the premises are located, and the full remedies and rights under this Lease pertaining to any such breach, regardless of the period of time that may elapse between the breach and any action taken in relation there.   The parties hereto may, in addition and at their option, pursue any remedies granted herein pertaining to any such breach, and the choice of any such remedy shall not be deemed to be an election of remedies, and shall not preclude the exercise of any other remedies so granted, or at law or in equity."

{¶ 80} Wauseon Hardware also contends that Plaza Limited is raising for the first time on appeal its argument that there was no unjust enrichment.   Our review of Ohio law indicates that disgorgement is an available remedy for a claim of breach of fiduciary duty.   Typically, it is seen in an action by shareholders against the corporation for disgorgement of profits.   In the context of this case, Wauseon Hardware seeks to recover the difference between the rent it paid and

the percentage rent it could have paid if it had exercised the percentage rent option when it first had the opportunity to do so.

{¶ 81} The anti-waiver provision relied upon as the basis for Wauseon Hardware's ability to recoup rent overpayment applies only when there is a breach of the lease. The trial court based its award of disgorgement of rent on its determination that Plaza Limited had breached the lease by failing to maintain anchor tenants. Since we have determined that there was no such obligation, there was no breach of the lease by Plaza Limited and the anti-waiver provision does not apply.

{¶ 82} Although Wauseon Hardware could have paid reduced rent in accordance with paragraph 22 starting September 1, 1995, the evidence shows that it intentionally chose not to. Wauseon Hardware's failure to exercise this option means that it obligated itself to pay rent in the amount of $4,465 monthly. Nothing in the contract allows Wauseon Hardware to retroactively apply the option and recover the difference in rent. We find, therefore, Plaza Limited's sixth assignment of error well taken.

## VII. Remaining Assignments and Cross–Assignments of Error

### A. Tort v. Contract—Second Assignment of Error

{¶ 83} In its second assignment of error, Plaza Limited contends that the trial court erred by applying tort principles to Wauseon Hardware's claims because there is a contract governing the parties' business relationship. Based on our disposition of Wauseon Hardware's contract and tort claims, we find this assignment of error moot.

### B. Lost Profits—Fifth Assignment of Error

{¶ 84} In its fifth assignment of error, Plaza Limited argues that the trial court erred in awarding lost profits because the evidence on lost profits was speculative and because there was no evidence that Plaza Limited caused lost profits through wrongful conduct. Based on our disposition of the other assignments of error, we find this assignment of error moot.

### C. Nunc Pro Tunc Entry—Seventh Assignment of Errors

{¶ 85} In the seventh assignment of error, Plaza Limited contends that the trial court erred in extending the judgment against Wauseon Plaza Limited Partnership to Charles O. Howey, trustee of the Charles O. Howey Trust, and C.O. Management Services Company. Based on our disposition of the Plaza Limited's other assignments of error, we find this assignment of error moot.

### D. Cross–Assignments of Error

{¶ 86} Given our conclusions regarding Plaza Limited's assignments of error, Wauseon Hardware's cross-assignments of error challenging the reduction of its damages award and lack of a punitive damages award are moot.

### E. Deposition of Paul Howey

{¶ 87} In the event of reversal, Wauseon Hardware assigns as error the trial court's exclusion of Paul Howey's deposition from evidence. Wauseon Hardware argues that Civ.R. 32(A)(2) permits the deposition of an officer of an adverse party to be admitted at trial. During cross-examination of Paul Howey, vice president of C.O. Management Service Company, Wauseon Hardware sought to admit the deposition of Paul Howey taken October 5, 2001, and March 19, 2002. After initially taking the motion under advisement, the trial court denied it. Wauseon Hardware requested a reconsideration of this ruling during its case-in-chief. The trial court took the matter under advisement and then permitted the parties to file post-trial briefs on the issue. In a judgment entry filed April 5, 2002, the trial court denied admission of the deposition, noting that Paul Howey was not "unavailable," had in fact testified, and had been cross-examined.

{¶ 88} Generally, the admission or exclusion of evidence rests in the trial court's sound discretion and will not be reversed absent an abuse of that discretion. *State v. Hymore* (1967), 9 Ohio St.2d 122, 128, 38 O.O.2d 298, 224 N.E.2d 126. To find an abuse of discretion we must determine that the trial court's decision was unreasonable, arbitrary, or unconscionable, and not merely an error of law or judgment. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140. Civ.R. 32(A)(2) provides as follows:

{¶ 89} "(A) Use of depositions.

{¶ 90} "Every deposition intended to be presented as evidence must be filed at least one day before the day of trial or hearing unless for good cause shown the court permits a later filing.

{¶ 91} "At the trial or upon the hearing of a motion or an interlocutory proceeding, any part or all of a deposition, so far as admissible under the rules of evidence applied as though the witness were then present and testifying, may be used against any party who was present or represented at the taking of the deposition or who had reasonable notice thereof, in accordance with any one of the following provisions:

{¶ 92} " * * *

{¶ 93} "(2) The deposition of a party or of anyone who at the time of taking the deposition was an officer, director, or managing agent, or a person designated under Rule 30(B)(5) or Rule 31(A) to testify on behalf of a public or private

corporation, partnership or association which is a party may be used by an adverse party for any purpose."

{¶ 94} The 1970 staff notes to Civ.R. 32(A)(2) indicate that "a party may use the deposition of an adverse party or the persons enumerated in Rule 30(B)(5) not only for impeachment purposes, but also as substantive evidence."

{¶ 95} While it appears that the trial court erred in not admitting the deposition, Wauseon Hardware still must show that it was prejudiced in order for us to find reversible error. App.R. 12. After examining the record, including the deposition, we find that Paul Howey was subject to extensive cross-examination, which essentially covered everything contained in his deposition. Furthermore, Wauseon Hardware does not argue that it was prejudiced, simply that the omission of the deposition testimony was error. We, therefore, find that Wauseon Hardware's assignment of error in event of reversal is not well taken.

## VIII. Conclusion

{¶ 96} In summary, the judgment of the Fulton Country Court of Common Pleas is affirmed in part and reversed in part.

{¶ 97} We affirm the trial court's judgment on appellant and cross-appellee Plaza Limited's eighth assignment of error and appellee and cross-appellant Wauseon Hardware's assignment of error in the event of reversal.

{¶ 98} We reverse on Plaza Limited's first, third, fourth, and sixth assignments of error.

{¶ 99} We find Plaza Limited's second, fifth, and seventh assignments of error and Wauseon Hardware's cross-assignments of error moot.

{¶ 100} Costs of this appeal are assessed to appellee and cross-appellant Wauseon Hardware.

Judgment affirmed in part
and reversed in part.

PETER M. HANDWORK, P.J., and MARK L. PIETRYKOWSKI, J., concur.