F & L CENTER COMPANY, APPELLEE,
v. CUNNINGHAM DRUG STORES, INC.
ET AL., APPELLANTS.

(No. 47552—Decided July 9, 1984.)

*Bernard Stuplinski,* for appellee.
*Thomas P. Meany, Jr.,* and *Toby L. Plevin,* for appellants.

PRYATEL, J. Plaintiff, F & L Center Company (hereinafter "F & L"), brought this action for restitution of leased premises against defendants, Cunningham Drug Stores, Inc. (hereinafter "Cunningham") and Gray Drug Fair, Inc. (hereinafter "Gray Drug"). Upon the stipulated facts and the briefs of the parties, the trial court found for F & L holding that the consent of F & L was necessary for any assignment to take place. We affirm.

The following facts have been stipulated and are pertinent to this appeal. On July 8, 1966, H. Goodman, Inc. (a predecessor in interest to F & L) entered into a lease agreement with SuperX Drugs, Inc.[1] (a predecessor in interest to Cunningham) for premises

────────

[1] SuperX' obligation was guaranteed by the Kroger Company of which SuperX is a wholly owned subsidiary.

located at 6280 Pearl Road in Parma Heights. The original term was for ten years with renewals (by option of the lessee SuperX) from October 1, 1976 to September 30, 1980, from October 1, 1980 to September 30, 1983, and from October 1, 1983 to September 30, 1986.

SuperX took possession in 1966 and operated a retail drug store on the premises. On October 31, 1968, H. Goodman, Inc., as landlord, assigned its interest in the premises to Albert J. Goodman. Thereafter, on March 13, 1972, SuperX, with the consent of Goodman, assigned its interest in the premises to Cunningham, which also operated a retail drug store. Goodman as lessor assigned his entire interest in the premises to F & L on August 30, 1973. On March 19, 1976, Cunningham exercised its option to renew the lease until September 30, 1980. In 1980, Cunningham again exercised its option and renewed the lease until September 30, 1983. On April 21, 1982, Cunningham, after notifying F & L of the proposed assignment and the nature of the business to be conducted, assigned its interest in these premises to Gray Drug.[2] F & L did not consent to this assignment. Gray Drug moved into the premises and has operated a retail drug store there since late April 1982. Prior to April 21, 1982, F & L had been approached by Fisher Foods, Inc., another tenant in these premises, regarding the possibility of expansion into the parking lot. After April 21, 1982, Fisher Foods and F & L discussed the possibility of expanding into the area of the building leased by Cunningham.

On June 29, 1982, F & L served notice on Gray Drug to vacate the premises. This same notice was given to Cunningham on July 1, 1982. Gray Drug and Cunningham did not vacate the

premises and the instant action was commenced. The trial court held in favor of F & L, and defendants Gray Drug and Cunningham appeal.

Assignments of Error I and II

"I. The trial court's interpretation of paragraphs 25 and 25A of the lease agreement violates the principles of law that restraints against alienation of property must be (A) clearly expressed, (B) may not be implied, and (C) are strictly construed against the landlord.

"II. The trial court's interpretation of paragraphs 25 and 25A violates fundamental principles of contract construction since the express terms thereof do not require the prior consent of the landlord to an assignment by the tenant where the proposed assignee's business does not conflict with exclusive rights of other tenants."

The first and second assignments of error are interrelated and will be treated together. Appellants, Gray Drug and Cunningham, base their first contention on the trial court's interpretation of paragraphs 25 and 25A of the lease:

"25. If at any time Tenant shall desire to sublet or assign the demised premises, it shall notify Landlord of the name of the proposed subtenant or assignee and of the general nature of the business which such subtenant or assignee proposes to conduct. If the business which such subtenant or assignee proposes to conduct would conflict with exclusive rights granted in leases to other tenants, Landlord may, within ten (10) days of receipt of such notice, refuse to approve such sublease or assignment. If Landlord fails to approve such subtenant or assignee within ten (10) days after receipt of such notice, or if Landlord refuses to approve such subtenant or assignee for any other reason than that

---

[2] The record indicates that Cunningham only notified F & L of this assignment. Apparently Cunningham did not seek F & L's

consent, since they argue here that consent was not necessary.

permitted above, Tenant may terminate the Lease. Landlord shall, at any time Tenant may request, supply to Tenant copies from leases to other tenants of all clauses granting exclusive rights to conduct various businesses in the Shopping Center.

"25A. In clarification of paragraph 25, it is understood that should Tenant propose to sublet or assign the demised premises for use which would conflict with exclusive rights granted in leases to other tenants and if Landlord should refuse to approve such sublease or assignment, Tenant shall not have the right to cancel this Lease. Notwithstanding any subletting or assignment, the Tenant shall remain liable under the terms of this Lease."

Appellants contend that these provisions do not require the consent of F & L to an assignment unless the proposed assignee engages in a business which is in competition with one of the other tenants. In support of this contention, appellants argue that the word "such," as used in paragraph 25, refers only to a subtenant or assignee whose business would conflict with that of another tenant. We believe this interpretation to be strained and unacceptable.

Paragraph 25 allows the tenant (Cunningham) to terminate the lease if the lessor (F & L) refuses or fails to approve a sublease or assignment when the sublessee or the assignee is in competition with another business at those premises or *for any other reason*. The critical language in paragraph 25 is as follows:

"* * * [I]f Landlord fails to approve such subtenant or assignee within ten (10) days after receipt of such notice,[3] *or if Landlord refuses to approve such subtenant or assignee for any other reason than that permitted above,*[4] *Ten-ant may terminate the Lease. * * *"* (Emphasis added.)

Moreover, paragraph 25 when read together with paragraph 25A, does not limit the necessity of obtaining the lessor's prior consent to a situation where a proposed assignee's business conflicts with the exclusive rights of another tenant. Rather, it gives to Cunningham the right to terminate the lease only after consent is refused (or is not given) to an assignment which does not conflict with the business of another tenant.

In other words, the provisions of paragraph 25 permitting the lessee to terminate the lease if the proposed subtenant or assignee is not approved, when modified by paragraph 25A, restrict the lessee's right to cancel to situations where the business of the proposed subtenant or assignee would not conflict with that of another tenant.

Appellants' assertion that the word "such," as used in this paragraph, refers to only those proposed subtenants or assignees whose business would conflict with that of another tenant is also without merit as is evidenced by the first sentence of paragraph 25:

"If at any time Tenant shall desire to sublet or assign the demised premises, it shall notify Landlord of the name of the proposed subtenant or assignee and of the general nature of the business which *such* subtenant or assignee proposes to conduct." (Emphasis added.)

The repeated use of the word "such" refers back to any proposed subtenant or assignee regardless of the business it intends to conduct.

From the language of paragraph 25 it is clear that F & L retained the right to prevent an assignment for any reason if it so desired.

---

[3] Notice of a proposed assignee whose business would conflict with the exclusive rights granted to another tenant.

[4] Notice of a proposed assignee whose business would not conflict with that of another tenant.

Accordingly, appellants' first and second assignments of error are overruled.

### Assignment of Error No. III

"III. The trial court lacked jurisdiction to order restitution of the premises since the lease agreement does not provide for forfeiture of the lease upon the assignment thereof without the landlord's consent."

Although cited as an assignment of error, appellants have neglected to separately argue this point anywhere in their brief.[5] Accordingly, pursuant to App. R. 12(A)[6] we shall disregard it.

### Assignment of Error No. IV

"IV. The trial court erred by holding that the landlord could unreasonably refuse to consent to a proposed assignment by the tenant."

Appellants rely upon *Shaker Bldg. Co.* v. *Fed. Lime & Stone Co.* (1971), 28 Ohio Misc. 246 [57 O.O.2d 486], for the proposition that a lessor may not unreasonably withhold his consent to an assignment where the only requirement in the lease is the lessor's consent. Appellants also cite additional authorities from other jurisdictions holding that a lease is a contract and the parties are held to a standard of commercial reasonableness, notwithstanding the absence of the word "reasonable" from the lease agreement. See, *e.g., Fernandez* v. *Vazquez* (Fla. App. 1981), 397 So. 2d 1171.

A panel of this court, however, reversed the lower court's holding in *Shaker Bldg. Co., supra. Shaker Bldg. Co.* v. *Fed. Lime & Stone Co.* (March 2, 1972), Cuyahoga App. No. 31451, unreported. This court held that the provision in that lease was unambiguous and that the lessor had complete control over whether or not he would consent to an assignment, unencumbered by any stipulation to arbitrariness. *Id.* at 2, citing Annotation (1953), 31 A.L.R. 2d 831. Additionally, the majority of authority in this country supports the view that where the consent of the lessor to an assignment is required, that consent may be withheld for any reason *absent express language* in the lease that it may not be unreasonably withheld. *B & R Oil Company, Inc.* v. *Ray's Mobile Homes, Inc.* (1980), 139 Vt. 122, 422 A. 2d 1267; *Herlou Card Shop, Inc.* v. *Prudential Ins. Co. of America* (1979), 73 App. Div. 2d 562, 422 N.Y.Supp. 2d 708; see, also, Annotation (1983), 21 A.L.R. 4th 188. In passing, we note that paragraph 14 requires the lessor's consent to major structural changes requested by lessee and that such consent may not be unreasonably withheld. Thus, the parties were aware of and could have placed (but did not) this same restriction on subletting and assignments.

In the instant case, the lessor has no encumbrance in its decision whether to allow an assignment. Nor was F & L unreasonable in its desire to regain this space in order to allow another tenant, Fisher Foods, to expand. To permit Cunningham, without prior consent of

---

[5] We note that paragraph 9 of the lease allows the lessor to reenter the premises where the lessee has breached the lease.

[6] App. R. 12(A) reads:

"Determination. In every appeal from a trial court of record to a court of appeals, not dismissed, the court of appeals shall review and affirm, modify, or reverse the judgment or final order of the trial court from which the appeal is taken. The appeal shall be determined on its merits on the assignments of error set forth in the briefs required by Rule 16, on the record on appeal as provided by Rule 9, and, unless waived, on the oral arguments of the parties, or their counsel, as provided by Rule 21. Errors not specifically pointed out in the record and separately argued by brief may be disregarded. All errors assigned and briefed shall be passed upon by the court in writing stating the reasons for the court's decision as to each such error."

lessor, to assign its leasehold interest to any other party it chooses whose business did not conflict with that of the other tenants would make F & L a virtual prisoner of the lessee, Cunningham. In the absence of any encumbrance upon its consent F & L acted within its rights under the lease.

Accordingly, appellants' fourth assignment of error is overruled.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

JACKSON, P.J., concurs.

NAHRA, J., dissents.

NAHRA, J. I respectfully dissent. I would read the words "for any other reason" in the context in which they appear in paragraph 25 of the lease to require good faith and commercial reasonableness.

Restrictions against the assignment of leases are restraints against the alienation of property interests. *Fairbanks* v. *Power Oil Co.* (1945), 81 Ohio App. 116, 122 [36 O.O. 418]. As such, they are strictly construed against the lessor. *Funk* v. *Funk* (1981), 102 Idaho 521, 524, 633 P.2d 586; see *Fairbanks, supra,* at 122. This basic principle is exemplified by the trend of recent cases which have held that a lessor must act reasonably in withholding consent under a lease provision requiring the lessor's consent to the lessee's assignment. Accord *L & H Investments* v. *Belvey Corp.* (W.D.N.C. 1978), 444 F. Supp. 1321; *Homa-Goff Interiors, Inc.* v. *Cowden* (Ala. 1977), 350 So. 2d 1035; *Cohen* v. *Ratinoff* (1983), 147 Cal. App. 3d 321, 195 Cal. Rptr. 84; *Fernandez* v. *Vazquez* (Fla. App. 1981), 397 So. 2d 1171; *Funk* v. *Funk, supra; Logan* v. *3750 N. Lake Shore Drive, Inc.* (1974), 17 Ill. App. 3d 584, 308 N.E. 2d 278; *Boss Barbara, Inc.* v. *Newbill* (1982), 97 N.M. 239, 638 P. 2d 1084.

The underlying rationale for requiring a lessor to act reasonably "is that a lease, being a contract, should be governed by general contract principles of good faith and commercial reasonableness." *Boss Barbara, supra,* at 241; *Fernandez, supra,* at 1173-1174. The Second District Court of Appeals of California, quoting from *McWilliams* v. *Holton* (1967), 248 Cal. App. 2d 447, 451, 56 Cal. Rptr. 574, has stated that:

" 'In every contract there is an implied covenant that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract; which means that in every contract there exists an implied covenant of good faith and fair dealing' (*Universal Sales Corp.* v. *California etc. Mfg. Co.,* 20 Cal. 2d 751, 771 [128 P. 2d 665].) 'This covenant not only imposes upon each contracting party the duty to refrain from doing anything which would render performance of the contract impossible by any act of his own, but also the duty to do everything that the contract presupposes that he will do to accomplish its purpose. [Citations.]' (*Harm* v. *Frasher,* 181 Cal. App. 2d 405, 417 [5 Cal. Rptr. 367].)" *Cohen* v. *Ratinoff, supra,* at 329, 195 Cal. Rptr. at 88-89.

In effect, if the lessor is permitted to arbitrarily refuse consent to an assignment, the right of the lessee to assign would be virtually nullified.

Further, the jurisdictions which would have rejected the old traditional rule have emphasized that the days of *caveat emptor* no longer exist even as to commercial leases. See, *e.g., Schweiso* v. *Williams* (1984), 150 Cal. App. 3d 883, 198 Cal. Rptr. 238, 240. The need for permitting the reasonable alienation of commercial building space has become paramount in our increasingly urban society. *Id.; Homa-Goff Interiors, supra,* at 1037.

For all of the above reasons, I would imply a standard of reasonableness to

the words "for any other reason" and hold that appellee-lessor may refuse consent only where it has a good faith reasonable objection to the lessee's assignment, *i.e.,* one related to the assignment itself and not, as here, to the wish of the lessor to lease the property to another. Examples of good faith reasonable objections would be the inability to fulfill the terms of the lease, financial irresponsibility or instability, the unsuitability of the premises for the intended use, or the intended unlawful or undesirable use of the premises. *Cohen, supra,* at 330, 195 Cal. Rptr. at 89. However, denying consent solely on the basis of personal taste, convenience, sensibility, or to charge a higher rent will not meet the tests of good faith and commercial reasonableness. *Fernandez, supra,* at 1174. Whim or caprice constitute arbitrary reasons and will not be upheld. *Funk, supra,* at 524. In other words, consent is not to be withheld unless the prospective assignee is unacceptable, using the same standards that were applied in accepting the original tenant. *Boss Barbara, supra,* at 241.

This case differs from *Shaker Bldg. Co.* v. *Fed. Lime & Stone Co.* (March 2, 1972), Cuyahoga App. No. 31451, unreported, in one critical respect. In *Shaker Bldg.,* the lease contained a specific prohibition against assignments as follows:

"The Lessee shall not, without the prior written consent of the Lessor, (a) assign or convey this lease or any interest under it, (b) allow any transfer here of or any lien upon the Lessee's interest by operation of law, (c) sublet the premises or any part thereof, or (d) permit the use or occupancy of the premises or any part thereof by anyone other than the Lessee."

No such language or anything similar appears in the lease before us. In fact, paragraph 25 of the lease herein gives rights to the *tenant* rather than to the landlord. Had the parties intended to give the landlord an arbitrary, unfettered right to refuse consent to an assignment of the lease, they could have expressed it clearly. I would not read the language used in a way that works a forfeiture.

I would reverse and enter judgment for appellants.