**LITTLEJOHN et al., Appellants,**

v.

**PARRISH et al., Appellees.**

[Cite as *Littlejohn v. Parrish*, 163 Ohio App.3d 456, 2005-Ohio-4850.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–040720.

Decided Sept. 16, 2005.

Katz, Teller, Brant & Hild and James F. McCarthy III, for appellants.

Edward J. McTigue, for appellees.

MARK P. PAINTER, Judge.

{¶ 1} May a mortgagor prepay a note secured by real estate when the note states that prepayment is subject to the mortgagee's approval, but does not contain language that consent shall not be unreasonably withheld? And is the contract subject to an implied term of good faith and fair dealing? We find very little Ohio law on the subject, and what there is we believe to be mistaken. We answer yes to both questions.

{¶ 2} Plaintiffs-appellants Roger and Joan Littlejohn appeal the trial court's summary judgment in favor of defendants-appellees Donald and Elaine Parrish. Because genuine issues of material fact remain, we reverse the grant of summary judgment and remand the case to the trial court.

### I. A (Now) High–Interest Note

{¶ 3} In August 1991, the Littlejohns executed a mortgage note with the Parrishes. According to the note, the Littlejohns were obligated to repay the Parrishes a principal amount of $92,000, plus nine percent interest, in 180 equal monthly installments. The original note stated, "There shall be no prepayment penalty of any nature against the maker for early payment of principal and simple interest shall only apply to the unpaid balance." The Parrishes were apparently concerned about prepayment, so they inserted an additional clause before execution stating, "Any prepayment shall be subject to approval of holder(s) hereof."

{¶ 4} The note was originally secured by property on Dana Avenue in Cincinnati. The Littlejohns soon after sold the Dana property, and the Parrishes agreed to substitute new property on Murray Avenue as collateral for the note.

{¶ 5} The Littlejohns then arranged to sell the Murray property. At the same time, the Littlejohns requested to pay off the entire mortgage note to the Parrishes. The Parrishes refused. According to the Littlejohns, this refusal jeopardized the sale of the Murray property and delayed the closing. The Parrishes eventually accepted new collateral, property located on Stanley Avenue, in 1992.

{¶ 6} The Littlejohns then sold the Stanley property and again requested to pay off the note to the Parrishes. The Littlejohns claimed that the Parrishes' refusal jeopardized the property sale, but the Parrishes finally agreed to substitute new collateral in 1996, this time a vacant lot on Stanley that the Littlejohns owned.

{¶ 7} When the Littlejohns sold the vacant lot on Stanley, they for the third time requested to pay off the mortgage note in full. Again, the Parrishes

refused. The collateral for the note was moved in 2000 to a fifth property, this one located on Mayfair Street in Valleydale, Ohio.

{¶ 8} The Littlejohns made the monthly payments on the note until 2003, when only $34,000 remained on the debt. In January 2003, the Littlejohns made a final request to the Parrishes to pay off the mortgage note. After being refused, the Littlejohns offered additional compensation for being allowed to pay off the mortgage, but were again refused. After February 2003, the Littlejohns defaulted on the note.

## II. Prepayment or Not

{¶ 9} In their suit, the Littlejohns sought a declaratory judgment verifying their right to prepay the note. The trial court determined that the terms of the note were clear and unambiguous and that the note allowed the Parrishes to withhold their approval of any prepayment. Therefore, the trial court granted summary judgment for the Parrishes.

{¶ 10} On appeal, the Littlejohns bring one assignment of error: that the grant of summary judgment was in error.

{¶ 11} We review a grant of summary judgment de novo.[1] The Parrishes were entitled to prevail on their summary-judgment motion only if (1) there was no genuine issue of material fact; (2) they were entitled to judgment as a matter of law; and (3) it appeared that reasonable minds could come to but one conclusion when viewing the evidence in favor of the party opposing the motion, and that conclusion was adverse to the party opposing the motion.[2]

{¶ 12} The Littlejohns claim that the Parrishes' refusal to allow them to pay off the note was unreasonable and amounted to a restraint on alienation. They claim that they wanted to sell the Mayfair property but could not because they could not transfer the property without an unencumbered title. The Littlejohns further argue that the Parrishes had a duty to act reasonably and in good faith by giving consent to prepayment of the note. We conclude that there is merit to the Littlejohns' contentions.

{¶ 13} The Parrishes argue that the contract clearly stated that any prepayment was subject to their approval. They claim that this meant that they could withhold consent for any reason they chose, or for no reason at all.

{¶ 14} Some Ohio case law, in the context of a tenant needing a landlord's consent to sublease or assign a lease, supports that argument. In *F & L Ctr. Co. v. Cunningham Drug Stores, Inc.*, the Eighth Appellate District held, "[T]he

---

1.  See *Doe v. Shaffer* (2000), 90 Ohio St.3d 388, 390, 738 N.E.2d 1243.

2.  See *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241.

majority of authority in this country supports the view that where the consent of the lessor to an assignment is required, that consent may be withheld for any reason *absent express language* in the lease that it may not be unreasonably withheld." [3]

{¶ 15} But as noted in Judge Nahra's dissent in *F & L Ctr. Co.*, "Restrictions against the assignment of leases are restraints against the alienation of property interests. * * * This basic principle is exemplified by the trend of recent cases which have held that a lessor must act reasonably in withholding consent under a lease provision requiring the lessor's consent to the lessee's assignment." [4] The *F & L Ctr. Co.* case was a two-to-one decision more than 20 years ago, and it relied on precedent even older. We believe that Judge Nahra's dissent was correct—and here, a nonpayable mortgage is surely a restraint on alienation.

{¶ 16} While Ohio courts have generally followed the majority opinion of *F & L Ctr. Co.*, "the trend has been in the opposite direction." [5] A Florida court has held that a landlord could not arbitrarily or unreasonably refuse consent, explaining, "Underlying the cases abolishing the arbitrary and capricious rule is the now well-accepted concept that a lease is a contract and, as such, should be governed by the general contract principles of good faith and commercial reasonableness." [6]

### III. Reasonableness Required

{¶ 17} Many jurisdictions that have followed the trend to impose a requirement of reasonableness on a landlord's withholding of consent have adopted Section 15.2(2) of the Restatement Second of Property: "A restraint on alienation without the consent of the landlord of the tenant's interest in the leased property is valid, but the landlord's consent to an alienation by the tenant cannot be withheld unreasonably, unless a freely negotiated provision in the lease gives the landlord an absolute right to withhold consent." [7]

{¶ 18} An Arizona appellate court has held, "[I]n every agreement there is an implied covenant of good faith and fair dealing so that neither party may do anything that will injure the rights or interests of another party to the agree-

---

3.  (Emphasis sic.) *F & L Ctr. Co. v. Cunningham Drug Stores, Inc.* (1984), 19 Ohio App.3d 72, 75, 19 OBR 156, 482 N.E.2d 1296; see, also, *Bender v. Ratener* (June 17, 1987), 9th Dist. No. C.A. 12915, 1987 WL 13633.

4.  *F & L Ctr. Co.*, supra, 19 Ohio App.3d at 76, 19 OBR 156, 482 N.E.2d 1296 (Nahra, J., dissenting).

5.  *Julian v. Christopher* (1990), 320 Md. 1, 6, 575 A.2d 735.

6.  *Fernandez v. Vazquez* (Fla.App.1981), 397 So.2d 1171, 1173–1174.

7.  Restatement of the Law 2d, Property (1977), Section 15.2(2).

ment." [8] And the California Supreme Court has recognized that "[w]here a contract confers on one party a discretionary power affecting the rights of the other, a duty is imposed to exercise that discretion in good faith and in accordance with fair dealing." [9] Numerous other state supreme courts have held that there is an implied duty of good faith and fair dealing in every contract.[10]

{¶ 19} Some courts have relied on the Restatement Second of Contracts, which states, "Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." [11] The Supreme Court of Connecticut has adopted the Restatement view.[12] Lower Connecticut courts have since held that contractual claims based on a breach of good faith are allowed in "lender/borrower relationships" [13] and that "there is no logical reason why good faith and fair dealing should be excluded from contractual arrangements involving mortgages." [14]

{¶ 20} The Mississippi Supreme Court has also held that every contract contains an implied covenant of good faith and fair dealing and that the duty "should properly apply to mortgage contracts." [15] And a District of Columbia appellate court has held that the contractual duty of good faith and fair dealing could exist between a cooperative and its members when the cooperative's board of directors chose not to reimburse certain members who had prepaid their mortgage debts.[16] Other courts have held that the implied duty of good faith

---

**8.** *Tucson Med. Ctr. v. Zoslow* (1985), 147 Ariz. 612, 614, 712 P.2d 459; see, also, *Warmack v. Merchants Natl. Bank* (1981), 272 Ark. 166, 169–170, 612 S.W.2d 733.

**9.** *Kendall v. Ernest Pestana Inc.* (1985), 40 Cal.3d 488, 500, 220 Cal.Rptr. 818, 709 P.2d 837, quoting *California Lettuce Growers v. Union Sugar Co.* (1955), 45 Cal.2d 474, 484, 289 P.2d 785.

**10.** *Amoco Oil Co. v. Ervin* (Colo.1995), 908 P.2d 493, 498; see, also, *In re Hennepin Cty.1986 Recycling Bond Litigation* (Minn.1995), 540 N.W.2d 494, 502; *Wilson v. Amerada Hess Corp.* (2001), 168 N.J. 236, 244, 773 A.2d 1121; *Comunale v. Traders & Gen. Ins. Co.* (1958), 50 Cal.2d 654, 658, 328 P.2d 198; *Fortune v. Natl. Cash Register Co.* (1977), 373 Mass. 96, 102, 364 N.E.2d 1251; *Cowardin v. Finnerty* (Wyo.1999), 994 P.2d 335, 338.

**11.** Restatement of the Law 2d, Contracts (1981), Section 205.

**12.** *Warner v. Konover* (1989), 210 Conn. 150, 154, 553 A.2d 1138.

**13.** *Plymouth Commons Realty Corp. v. Northeast Sav., F.A.* (Oct. 7, 1994), Conn.Super.Dist. of Hartford/New Britain No. CV 93–0456534, 1994 WL 622009.

**14.** *Lafayette Bank & Trust Co. v. D'Addario* (1993), Dist. of Fairfield No. CV92 0293534S, 1993 WL 407842.

**15.** *Merchants & Planters Bank v. Williamson* (Miss.1997), 691 So.2d 398, 405.

**16.** *Willens v. 2720 Wisconsin Ave. Coop. Assoc., Inc.* (D.C.App.2004), 844 A.2d 1126, 1135.

exists, for example, between a potential buyer and seller of real property,[17] between vendees and vendors in a land-forfeiture proceeding,[18] and between an insurance company and its insured when the insurance company has failed to cover a claim for property damage.[19]

{¶ 21} Ohio law also supports that there is an implied duty of good faith in almost every contract. The Sixth Appellate District has held that the parties to a contract "are bound toward one another by standards of good faith and fair-dealing." [20] That court later recognized that good faith is part of a contract claim, not necessarily a separate tort claim.[21]

{¶ 22} This court has also held that there is a standard of good faith required of parties to any contract. In *Brown v. Otto C. Epp Mem. Hosp.*, we held that the standard of good faith is required of every contract, including employment contracts.[22]

{¶ 23} Though in *Sammarco v. Anthem Ins. Cos.*[23] we stated that it was not correct to say that every contract in Ohio is subject to an implied duty of good faith and fair dealing, our basis for that holding was the Ohio Supreme Court's decision in *Mers v. Dispatch Printing Co.*[24] But in *Mers*, the court merely refused to recognize a separate tort cause of action for a breach of good faith in a contract.[25] *Mers* is in line with the prevailing view—that the good-faith-and-fair-dealing requirement is part of the contract—not a separate tort claim. *Sammarco* further held that the duty of good faith, if it existed, was not breached. To the extent that *Sammarco* can be read to cast doubt on the issue, it is overruled. We

---

17. *Lajayi v. Fafiyebi* (R.I.2004), 860 A.2d 680, 687.

18. *Flynn v. Korneffel* (1996), 451 Mich. 186, 212–213, 547 N.W.2d 249 (Levin, J., dissenting); see, also, *Citicorp Sav. of Illinois v. Rucker* (1998), 295 Ill.App.3d 801, 807–808, 230 Ill.Dec. 153, 692 N.E.2d 1319.

19. *Track Mortgage Group, Inc. v. Crusader Ins. Co.* (2002), 98 Cal.App.4th 857, 865, 120 Cal.Rptr.2d 228.

20. *Bolling v. Clevepak Corp.* (1984), 20 Ohio App.3d 113, 121, 20 OBR 146, 484 N.E.2d 1367; see, also, *Wauseon Plaza Ltd. Partnership v. Wauseon Hardware Co.*, 156 Ohio App.3d 575, 2004–Ohio–1661, 807 N.E.2d 953, at ¶ 52.

21. *Wauseon*, supra, and *Lakota Local School Dist. Bd. of Edn. v. Brickner* (1996), 108 Ohio App.3d 637, 645–646, 671 N.E.2d 578.

22. *Brown v. Otto C. Epp Mem. Hosp.* (1987), 41 Ohio App.3d 198, 199, 535 N.E.2d 325.

23. *Sammarco v. Anthem Ins. Cos.* (1998), 131 Ohio App.3d 544, 554–555, 723 N.E.2d 128.

24. *Mers v. Dispatch Printing Co.* (1985), 19 Ohio St.3d 100, 19 OBR 261, 483 N.E.2d 150.

25. Id. at 105, 19 OBR 261, 483 N.E.2d 150.

do not in any way mean to suggest that Ohio's strong public policy of employment at will is subject to good faith, but once a contract for a term is formed, it should be interpreted just like any other contract. (All this is a bit off the subject, but in an abundance of caution we explain this so our decision will not be misinterpreted.)

{¶ 24} The Littlejohns have made no tort claim, instead alleging a breach of contract. We hold that a party can be found to have breached its contract if it fails to act in good faith.

{¶ 25} What does it mean for a party to have breached its duty of good faith? The Colorado Supreme Court has held that the implied duty of good faith and fair dealing "is generally used to effectuate the intentions of the parties or to honor their reasonable expectations" and "applies when one party has discretionary authority to determine certain terms of the contract." [26]

{¶ 26} As stated by the Restatement Second of Contracts, "Good faith performance or enforcement of a contract emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party." [27] It also states that bad faith may consist of inaction, or may be the "abuse of a power to specify terms, [or] interference with or failure to cooperate in the other party's performance." [28]

{¶ 27} We conclude that public policy dictates that every contract contain an implied duty for the parties to act in good faith and to deal fairly with each other. Any agreement—whether a lease, a secured loan, or something else—has an implied covenant of good faith and fair dealing that requires not only honesty but also reasonableness in the enforcement of the contract.

{¶ 28} Therefore, we hold that the Littlejohns and the Parrishes were required to deal reasonably with each other. Whether they did so was an unresolved question of fact that made the grant of summary judgment inappropriate in this case.

{¶ 29} We are somewhat mystified that the case has proceeded to our court. Surely, the Parrishes were entitled to the benefit of their bargain—they had a high interest rate of nine percent, negotiated when prevailing rates were higher. To allow the Littlejohns to pay off the loan early would deprive them of that rate of return.

---

26. *Amoco Oil Co. v. Ervin*, supra note 10.

27. Restatement of the Law 2d, Contracts (1981), Section 205, Comment a.

28. Id., at Comment d.

{¶ 30} But anything involving only money can be reduced to present value. That is, a nine percent interest rate on the remaining balance payable over the remaining period can be valued and used to pay off the loan reasonably. If this was offered and refused, then the Parrishes were not dealing fairly, and their refusal to release the loan would have been an unreasonable restraint on alienation. If the Littlejohns simply insisted on paying off the loan without accounting for the now generous interest rate, then their actions were unreasonable. The trier of fact should be able to figure this out.

{¶ 31} If the finder of fact determines that the Parrishes withheld consent arbitrarily and unreasonably, then the Parrishes breached the contract. If the finder of fact determines that the Parrishes' refusal to consent has resulted in a restraint on alienation for the Littlejohns or has in some way affected the Littlejohns' rights, then the refusal may be assumed to have been unreasonable, and the Parrishes have breached the contract.

{¶ 32} Because there remain genuine issues of material fact, we must reverse the grant of summary judgment in favor of the Parrishes. If the Parrishes have indeed breached the contract, then the Littlejohns are entitled to judgment in their favor. We reverse the trial court's judgment and remand the cause for further proceedings.

Judgment reversed
and cause remanded.

DOAN, P.J., and HILDEBRANDT, J., concur.