[Cite as *PHH Mtge. Corp. v. Ramsey*, 2014-Ohio-3519.]

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

PHH Mortgage Corporation fka      :
Cendant Mortgage Corporation dba
Coldwell Banker Mortgage,         :

        Plaintiff-Appellant,      :

v.                         :

Andrew Ramsey et al.,        :

        Defendants-Appellees.   :

Nos.   13AP-925
and   14AP-129
(C.P.C. No. 09CVE11-16763)

(REGULAR CALENDAR)

---

## D E C I S I O N

### Rendered on August 14, 2014

---

*Lerner, Sampson & Rothfuss LPA, Adam R. Fogelman*, and *Brad Terman*, for appellant.

*Doucet & Associates Co., L.P.A.*, and *Troy J. Doucet*, for appellee Andrew Ramsey.

---

APPEALS from the Franklin County Court of Common Pleas.

BROWN, J.

{¶ 1} PHH Mortgage Corporation (individually "PHH") fka Cendant Mortgage Corporation dba Coldwell Banker Mortgage (individually "Coldwell Banker"), plaintiff-appellant, appeals judgments of the Franklin County Court of Common Pleas, in which the court granted judgment in favor of Andrew Ramsey ("appellee") and Precision Real Estate Group, LLC ("Precision"), defendants-appellees (referred to singularly as "appellee").

{¶ 2} In 2003, appellee purchased real estate for use as a rental property. He executed a promissory note payable to Coldwell Banker and used the funds to finance the

real estate purchase. The note was secured by a mortgage in favor of Coldwell Banker. After the closing, appellee deeded the property to Precision. PHH subsequently became the holder of the note and mortgage.

{¶ 3}   Appellee made timely monthly payments until August 2009, at which time he attempted to pay his monthly mortgage through a "pay now" link on PHH's website, referred to as "Speedpay," as he had been doing for six years. However, when he attempted to do so on August 3, 2009, he received an error message informing him that his payment could not be processed. He tried again on August 6 and 10 but received the same error message. On August 13, 2009, appellee tried to pay online again via Speedpay, and this attempt appeared successful, but he did not receive a confirmation number. Appellee telephoned the Coldwell Banker help line and was told this his payment would be "pushed" through the system, and he was given a confirmation number for his August 2009 payment.

{¶ 4}   On August 16, 2009, PHH sent a notice to appellee informing him that his payment was late. Appellee again telephoned the help line and was told that the website was having problems but his payment would be processed.

{¶ 5}   On September 3, 2009, appellee went to PHH's website to make his September payment, and he realized that his August 2009 payment had still not been credited. He attempted to make an online payment via Speedpay and received an error message.

{¶ 6}   Appellee telephoned Coldwell Banker and explained the circumstances. The representative told him that his payment would be processed, but the late payment would be reported to credit bureaus, and there was no one else who could help him. Appellee insisted on speaking to another customer service representative who had the authority to help him, but the help line representative refused and hung up the phone.

{¶ 7}   On September 8, 2009, PHH issued appellee a notice of intent to foreclose.

{¶ 8}   On September 9, 2009, appellee traveled to Coldwell Banker's physical office to make payments but he was told by representatives that the office did not accept payments. Appellee contacted the real estate agent who sold him the house and the agent gave him the name of a Coldwell Banker representative. Appellee spoke to the representative but the representative never contacted him again as to a solution.

{¶ 9} On September 10, 2009, appellee mailed a payment for August and September 2009 to Coldwell Banker, with an explanation of the circumstances, but the payment was never processed or returned to him.

{¶ 10} On October 5, 2009, appellee mailed to Coldwell Banker a payment for October and November 2009, along with an explanation of the circumstances, but the payment was never processed or returned. Appellee made no attempt at payments after December 2009.

{¶ 11} During the time PHH was attempting to foreclose on the property, appellee had a renter leasing the property. On numerous occasions, PHH's representatives attempted to "winterize" the home and change the door locks, ultimately resulting in appellee's inability to continue renting the premises to a tenant.

{¶ 12} On November 10, 2009, PHH filed a complaint in foreclosure against appellee, as well as several others. PHH later added Precision as a defendant. On April 27, 2011, PHH filed a motion for summary judgment, which the trial court granted. Appellee appealed, and we reversed the trial court's decision in *PHH Mtge. Corp. v. Ramsey*, 10th Dist. No. 11AP-559, 2012-Ohio-672 ("*Ramsey I*"), finding there existed genuine issues of material fact regarding whether appellee defaulted in his payment of the note.

{¶ 13} On remand, the matter was heard before a magistrate pursuant to a bench trial. On July 17, 2013, the magistrate filed a decision, in which the magistrate denied PHH foreclosure and awarded appellee judgment for $1,550. PHH filed objections to the magistrate's decision. On October 2, 2013, the trial court overruled the objections. On January 17, 2014, the trial court issued a nunc pro tunc judgment related to the October 2, 2013 judgment. PHH appeals the judgments of the trial court, asserting the following assignments of error:

> I. The trial court erred by denying PHH Mortgage a judgment on its note against Mr. Ramsey.
>
> II. The trial court erred by not granting foreclosure of the mortgage.
>
> III. The trial court erred by not addressing the reformation of mortgage in its decision.

{¶ 14} PHH argues in its first assignment of error that the trial court erred when it denied PHH judgment against appellee on the note. After properly referring a matter to a magistrate, the court has the option to adopt, reject or modify a magistrate's decision, hear additional evidence, recommit the matter with instructions or hear the matter. *Id. DeSantis v. Soller*, 70 Ohio App.3d 226, 232 (10th Dist.1990). On appeal, we review the record of the trial court for an abuse of discretion. *Marchel v. Marchel*, 160 Ohio App.3d 240, 2005-Ohio-1499, ¶ 7 (8th Dist.). An abuse of discretion is more than an error of law or judgment; rather, it implies an attitude that is arbitrary, unreasonable or unconscionable. *George v. Ohio Dept. of Human Servs.*, 145 Ohio App.3d 681, 686 (10th Dist.2001). An abuse of discretion may be found when the trial court "applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact." *Thomas v. Cleveland*, 176 Ohio App.3d 401, 2008-Ohio-1720, ¶ 15 (8th Dist.). However, for questions of law, we review such de novo. *State v. Vinson*, 11th Dist. No. 2013-L-015, 2013-Ohio-5826, ¶ 8.

{¶ 15} Furthermore, as to civil judgments, "[j]udgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279 (1978), syllabus. When considering whether a civil judgment is against the manifest weight of the evidence, an appellate court is guided by a presumption that the findings of the trier of fact were correct. *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 79-80 (1984). An appellate court should not substitute its judgment for that of the trial court when there exists competent and credible evidence supporting the findings of fact and conclusions of law rendered by the trial judge. *Id.* at 80.

{¶ 16} In its decision in the present case, the trial court adopted the magistrate's decision and overruled PHH's objections. The magistrate found that appellee did not default on the terms of the note and mortgage. The magistrate determined that, despite PHH's claim that appellee did not have the contractual right to make his payments electronically; PHH waived the terms of the contract by accepting electronic payments from appellee for six years without objection. The magistrate concluded that the August 2009 payment was properly made. The magistrate observed that the contract

contemplated, via the provision for late fees, that payment would occasionally be technically late but still within the proper performance obligations of appellee, and PHH waived strict performance of the term relating to the contractual due date by accepting appellee's payments after the deadline on many occasions. The magistrate also found the anti-waiver provisions in the note and mortgage were inoperative under the present facts. With regard to the anti-waiver provision in the note, the magistrate found the provision was only operative if there was a default, and there was no default here. With regard to the anti-waiver provision in the mortgage agreement, the magistrate found that the provision was only operative when the lender accepted partial or insufficient payment, which was not the situation in the present action.

{¶ 17} PHH argues herein that appellee tendered neither the August 1, 2009 payment nor sufficient payments thereafter and, thus, was in default. PHH asserts that appellee could not rely upon his attempts to pay via Speedpay because that system was controlled by Western Union and not PHH and, as such, did not constitute payments "tendered" to PHH. PHH contends that appellee needed to show not simply that he sent a payment through Speedpay, but that PHH had knowledge and receipt of the payment, which it did not. Therefore, PHH argues, appellee was in breach of the agreement when he failed to tender his August 1, 2009 payment, and when he later tried to tender his August, September, October, and November payments without the late charges and other expenses required under the agreement; he was in continued breach of the agreement.

{¶ 18} After a review of the record and testimony in this case, we agree with the magistrate's findings. Under Section 1 of the note, appellee promised to "pay" the lender the mortgage amount, plus interest, in the form of "cash, check or money order." Under Section 3 of the note, appellee agreed to "pay" the lender by making a payment on the first day of each month. Also under Section 3, appellee agreed to make payment at an address specified in the note, "or at a different place if required by the Note Holder." Section 6 of the note provided, in pertinent part, that if PHH did not "receive" the full amount of the monthly payment by the end of 15 calendar days after the date it was due, appellee would pay a late charge to PHH.  Section 6 further provided that if appellee did not "pay" the full amount of each monthly payment on the date it was due, appellee would be in default.

{¶ 19} This court explained the rule of waiver as it applies to contracts in *EAC Properties, L.L.C. v. Brightwell*, 10th Dist. No. 10AP-853, 2011-Ohio-2373, ¶ 21-23:

> As applied to contracts, waiver is a voluntary relinquishment of a known right. *State ex rel. Wallace v. State Med. Bd. of Ohio*, 89 Ohio St.3d 431, 435, 732 N.E.2d 960, 2000-Ohio-213. "Waiver assumes one has an opportunity to choose between either relinquishing or enforcing of the right." *Chubb v. Ohio Bur. of Workers' Comp.*[,] 81 Ohio St.3d 275, 279, 690 N.E.2d 1267, 1998-Ohio-628. A party who has a duty to perform and who changes its position as a result of the waiver may enforce the waiver. *Id.* at 279, 690 N.E.2d 1267, citing *Andrews v. State Teachers Retirement Sys.* (1980), 62 Ohio St.2d 202, 205, 404 N.E.2d 747. The party asserting waiver must prove the waiving party's clear, unequivocal, decisive act. *Automated Solutions Corp. v. Paragon Data Sys., Inc.*, 167 Ohio App.3d 685, 856 N.E.2d 1008, 2006-Ohio-3492, ¶ 28.
>
> "[W]aiver of a contract provision may be express or implied." *Lewis & Michael Moving & Storage, Inc. v. Stofcheck Ambulance Serv., Inc.*, 10th Dist. No. 05AP[-]662, 2006-Ohio-3810, ¶ 29, quoting *Natl. City Bank v. Rini*, 162 Ohio App.3d 662, 834 N.E.2d 836, 2005-Ohio-4041, ¶ 24, citing *Griffith v. Linton* (1998), 130 Ohio App.3d 746, 751, 721 N.E.2d 146. " '[W]aiver by estoppel' exists when the acts and conduct of a party are inconsistent with an intent to claim a right, and have been such as to mislead the other party to his prejudice and thereby estop the party having the right from insisting upon it." (Emphasis omitted.) *Id.*, quoting *Natl. City Bank* at ¶ 24, quoting *Mark-It Place Foods* at ¶ 57. "Waiver by estoppel allows a party's inconsistent conduct, rather than a party's intent, to establish a waiver of rights." *Id.*, quoting *Natl. City Bank* at ¶ 24.
>
> Whether a party's inconsistent conduct amounts to waiver involves a factual determination within the province of the trier of fact. *Id.* at ¶ 30, 834 N.E.2d 836, citing *Lamberjack v. Priesman* (Feb. 5, 1993), 6th Dist. No. 92-OT-006, fn. 5 and *Walker v. Holland* (1997), 117 Ohio App.3d 775, 791, 691 N.E.2d 719. Review of a trial court's factual determinations involves some degree of deference, and we will not disturb a trial court's findings of fact where the record contains competent, credible evidence to support such findings. *Wiltberger v. Davis* (1996), 110 Ohio App.3d 46, 52, 673 N.E.2d 628.

{¶ 20} In the present case, PHH argues that appellee neither "tendered" nor made a "payment" of the mortgage, relying upon various passages from *Jenkins v. Mapes*, 53 Ohio St. 110 (1895). PHH contends there was no payment here, citing *Jenkins*, because "[p]ayment is consummated by an acceptance of the thing tendered, and is incomplete until then." *Id.* at 115. PHH also asserts, citing *Jenkins*, that there was no tender here because, "there can be no tender of a thing unless the person to whom the tender is made has, by himself or agent, knowledge of it." *Id.* at 117. Relying upon these provisions in *Jenkins*, PHH claims that appellee could not simply show he sent a payment through Speedpay, but he needed to show that PHH had knowledge of the payment. PHH concludes that it did not have knowledge of a payment or accept or receive the payment because Speedpay is owned and controlled by Western Union.

{¶ 21} At trial, PHH presented the testimony of one witness, Ron Casperite, complex liaison for PHH, who testified that Speedpay is maintained by Western Union. However, he admitted he was not familiar how a PHH customer accesses the Speedpay website to make a mortgage payment.

{¶ 22} Appellee testified at the hearing that he had always paid his mortgage online. He described the payment process, as it related to the website of PHH's predecessor, Coldwell Banker:

> You log into their [Coldwell Banker's] website and you --
> there's a pay now button, and you basically click on that, you
> put in the money that you're going to pay, plus additional
> principal, and it redirected you to another site seamlessly and
> just processed your payment, and at the end it gave you a
> confirmation number.

(Tr. 26.)

{¶ 23} Appellee then answered questions about the circumstances surrounding his attempted payment of the mortgage on August 3, 2009:

> Q. All right. Andrew, you just testified you're current through
> July of 2009. What happened starting with your payment
> toward the mortgage and note in August 2009?
>
> A. I tried to make the payment online like I normally would
> and the website was erroring out and wouldn't let you submit
> your payment. So I waited -- it's actually -- it happened before

> in the past, and normally it would just, you know, if you try the next day or so, or three days it would work. So that's exactly what I did.

(Tr. 27.)

{¶ 24} Appellee said he "waited a few days like I normally did, because, like I said, this was a routine occurrence, it just happens, so I waited three days and I tried again, and I received the same message."  (Tr. 28.)  He received this second error message on August 6, 2009. Appellee testified that he again tried to pay his mortgage through the website of PHH's predecessor, Coldwell Banker, on August 10, 2009, but he received another error message.

{¶ 25} Appellee testified that he then called the help line for Coldwell Banker to discuss the issue:

> Q. And what was discussed?
>
> A. Well, basically, I, you know, hey, I can't make the payments, you know, can I make this payment or whatever? And they told me that the payments would go through, you know, that there was, you know, a system problem that they were having.
>
> Q. Okay. And were you told to do anything else or not to worry about it at that time, or what?
>
> A. Yeah. Well, I was told to try to go -- try to make another payment.
>
> Q. Okay. And did you?
>
> A. Yeah, I did actually try to make another payment, yeah.

(Tr. 30-31.)

{¶ 26} Appellee further testified that, on August 16, 2009, he received a notification from Coldwell Banker that the August 2009 payment was late. In response to the late notification, he again called the help line for Coldwell Banker. A customer service representative told him that his payment would be processed and gave him a

confirmation number. As of that time, appellee believed he had made his August 2009 mortgage payment.

{¶ 27} Appellee testified that, on September 3, 2009, he went on the Coldwell Banker website to make his September 2009 payment but received another error message. At that time, he realized that his August 2009 payment had never been credited. Appellee called the help line for Coldwell Banker to ask about the uncredited August 2009 payment and his credit score being affected, but the customer service representative told him there was nothing she could do about it and hung up the phone.

{¶ 28} Appellee testified that he then went to a physical location for Coldwell Banker, but employees there told him that they do not process payments or deal with these types of issues at that location.

{¶ 29} Appellee then testified that, on September 10, 2009, he mailed a check to Coldwell Banker for nearly four times the mortgage amounts for August and September 2009, along with a letter explaining the situation. These payments were not processed and not returned.

{¶ 30} Appellee testified that, on October 5, 2009, he sent another letter and check for nearly four times the amount of mortgage payments due for October and November 2009 to the Coldwell Banker address listed for mailing mortgage payments, but the check was never cashed or returned. Appellee testified that, at all relevant times, he had sufficient funds in his bank account to cover his mortgage payments, his attempted online payments, and the checks he wrote.

{¶ 31} Appellee also related a story during his testimony about how he contacted his former realtor, who had originally worked for Coldwell Banker and who had helped him with a similar issue a few months after the mortgage commenced. His former realtor again connected him with the same contact person at Coldwell Banker who had resolved his prior problem, but the person, "Sherrie," never called him back after she said she would look into the matter.

{¶ 32} Initially, the testimony of PHH's sole witness, Casperite, was brief and minimally helpful to the pertinent matters. The main issue revolved around appellee's attempted use of Speedpay online, a subject about which Casperite admitted he knew little. What Casperite did know about Speedpay was that it was owned by Western Union,

which PHH attempts to use as support for its argument that appellee never actually "tendered" or made "payment" to PHH itself. However, this argument misses the point.

{¶ 33} PHH fails to directly address the basis relied upon by the trial court to find that no default occurred here; that is, that PHH waived any claim that appellee did not have the contractual right to make his payments electronically by accepting electronic payments from appellee for six years without objection, and PHH waived strict performance of the due date term by accepting appellee's payments after the due date on many prior occasions. Initially, a promissory note is a contract, and rules of contract interpretation apply to the interpretation of promissory notes. *Cranberry Fin., L.L.C. v. S & V Partnership*, 186 Ohio App.3d 275, 2010-Ohio-464, ¶ 9 (6th Dist.), citing *Commercial Credit Co. v. Bishop*, 34 Ohio App. 217, 225 (1st Dist.1927), citing *Holzworth v. Koch, Mayer & Goldsmith*, 26 Ohio St. 33 (1875). It is well-established that every contract has an implied covenant of good faith and fair dealing that requires not only honesty but also reasonableness in the enforcement of the contract. *Littlejohn v. Parrish*, 163 Ohio App.3d 456, 2005-Ohio-4850, ¶ 21 (1st Dist.). " 'Good faith performance or enforcement of a contract emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party.' " *Id.* at ¶ 26, quoting Restatement of the Law 2d, Contracts, Section 205, Comment a (1981). Bad faith may consist of inaction, or may be the " 'abuse of a power to specify terms, [or] interference with or failure to cooperate in the other party's performance.' " *Id.*, quoting Restatement of the Law 2d, Contracts, Section 205, Comment d (1981). " 'Good faith' is a compact reference to an implied undertaking not to take opportunistic advantage in a way that could have not been contemplated at the time of drafting, and which therefore was not resolved explicitly by the parties." *Ed Schory & Sons, Inc. v. Soc. Natl. Bank*, 75 Ohio St.3d 433, 443-44 (1996), quoting *Kham & Nate's Shoes No. 2, Inc. v. First Bank of Whiting*, 908 F.2d 1351, 1357 (7th Cir.1990). Relatedly, "[w]here the obligations arising under a contract have attached, and subsequent thereto one party without the consent of the other does some act or makes some new arrangement which prevents the carrying out of the contract according to its terms, he cannot avail himself of this conduct to avoid his liability to the other party." *Suter v. Farmers' Fertilizer Co.*, 100 Ohio St. 403 (1919), paragraph four of the syllabus.

{¶ 34} In the present case, PHH was not reasonable in its enforcement of the promissory note. Despite PHH's attempt to portray the Speedpay website as an unrelated entity for which it could bear no responsibility, PHH, through its predecessor, explicitly agreed to permit its mortgage customers to pay their mortgages using the service. By permitting and, in fact, encouraging, its customers to pay their mortgages online by providing a Speedpay link on the predecessor's own website, PHH gave its customers a justified expectation that the Speedpay system would work properly. Here, it obviously did not work as intended and expected, and PHH, through its predecessor, explicitly assured appellee that his payment would be credited through the Speedpay system. PHH's actions here demonstrate a genuine failure to cooperate with appellee to make sure his mortgage payment would be properly credited. It is difficult to imagine anything more that appellee could have done, given the circumstances and past dealings between the parties as to how payments were handled and credited.

{¶ 35} Furthermore, although it is beyond dispute that the actual promissory note did not contain an explicit provision for payments via the internet, it did indicate that the borrower could make a payment "at a different place if required by the Note Holder." Likewise, although it could be disputed whether an online payment via Speedpay technically met the requirement of Section 1 of the note that payment be made in "cash, check or money order," for PHH to rely upon this provision, while at the same time encouraging borrowers to pay their mortgages through a link on their own website, violates the covenant of good faith by taking "opportunistic advantage in a way that could have not been contemplated at the time of drafting." *Ed Schory & Sons, Inc.*, at 444. By unilaterally offering Speedpay as a service to appellee, PHH offered appellee a new arrangement to make payments that prevented appellee from explicitly carrying out the terms of the contract in this instance, and PHH cannot now claim that appellee should have never relied on Speedpay.

{¶ 36} On these bases, we agree with the trial court that PHH waived any argument that appellee did not have the contractual right to make his payments electronically because it accepted electronic payments from appellee for six years without objection. Even if the contract did not explicitly permit electronic payments, PHH accepted

Speedpay as a form of payment from appellee from the commencement of the loan and never disputed that this was a valid form of payment.

{¶ 37} Furthermore, we agree that PHH waived strict performance of the due date term because it accepted appellee's payments after the due date on many prior occasions. Appellee testified that he had before received the same error when attempting an online payment through Speedpay, but would, in the past, always be able to make the payment when he tried a day or two later. There was no evidence that PHH ever objected to his payments on these terms or considered appellee in default or sought foreclosure. Appellee justifiably relied upon PHH's past actions to believe his past payments were not in default or grounds for foreclosure. As the trial court explained, given PHH's past inactions and the late-fee provision in the contract, appellee demonstrated that PHH contemplated that late payments would still properly fulfill appellee's obligations under the contract.

{¶ 38} As for the anti-waiver provisions contained in the mortgage and note, PHH does not contest the trial court's conclusions on this issue in its appellate brief. Notwithstanding, we agree with the trial court that the anti-waiver provisions in the note and mortgage were not operative here because appellee was not in default, and PHH never accepted partial or insufficient payment, which were the respective requisites for the application of the anti-waiver provisions in the note and mortgage. For all of the foregoing reasons, we find the trial court did not err when it denied PHH judgment on its note against appellee. Therefore, PHH's first assignment of error is overruled.

{¶ 39} PHH argues in its second assignment of error that the trial court erred when it did not grant foreclosure of the mortgage. PHH's contentions under this assignment of error rely upon the premise that appellee defaulted on the note. As we have found, consistent with the trial court, that appellee did not default on the note, we must reject PHH's argument that it had the right to foreclose on the property. Therefore, we overrule PHH's second assignment of error.

{¶ 40} PHH argues in its third assignment of error that the trial court erred by not addressing reformation of the mortgage. In its first decision on May 27, 2011, the trial court found that, as the result of a scrivener's error and mutual mistake of fact between the parties, the mortgage and deed in this action contained an incorrect legal description.

Thus, the court ordered that the mortgage and deed be reformed to conform to an exhibit attached to the decision.

{¶ 41} In the appeal in *Ramsey I*, appellee did not contest the trial court's reformation of the mortgage and deed, and, thus, we did not address the issue in that appeal. Nevertheless, in *Ramsey I*, we reversed the entire judgment of the trial court, in essence, returning the parties to the original positions prior to the granting of summary judgment. Our review of the record fails to demonstrate that PHH pursued its reformation argument in the trial court after our remand in *Ramsey I*. PHH never raised the issue of reformation in its post-trial closing argument brief or in its objections to the magistrate's decision. Our review of the transcript does not reveal any testimony related to reformation. Neither the magistrate nor the trial court addressed reformation in their respective decisions. It is well-settled that a litigant's failure to raise issues for the trial court's determination waives those issues for purposes of appeal. *See State v. Johnson*, 10th Dist. No. 13AP-637, 2014-Ohio-671, ¶ 14. Furthermore, PHH's failure to raise the magistrate's failure to address the issue of reformation in its objections to the magistrate's decision waives the issue on appeal. *See* Civ.R. 53(D)(3)(b)(iv) (except for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, unless the party has objected to that finding or conclusion); *State ex rel. Muhammad v. State*, 133 Ohio St.3d 508, 2012-Ohio-4767, ¶ 3 (appellant waived claim on appeal by failing to specifically raise claim in his objections to the magistrate's decision in the trial court). For these reasons, we must overrule PHH's third assignment of error.

{¶ 42} Accordingly, PHH's first, second, and third assignments of error are overruled, and the judgments of the Franklin County Court of Common Pleas are affirmed.

*Judgments affirmed.*

SADLER, P.J., and TYACK, J., concur.

_____